# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

CLARISSA VAN BUSKIRK *et al.*

*v.*

THOMAS VAN BUSKIRK.

*Filed at Ottawa October 26, 1893.*

1. RESULTING TRUST—*when it arises.* Where one of two persons, who are strangers to each other, takes the title to a piece of land, but the other advances the purchase money, a resulting trust will exist in favor of the latter, and the holder of the legal title will be regarded as the trustee of the party furnishing the money.

2. Where two persons together advance the price, and title is taken in the name of one of them, a trust results in favor of the other to such proportion of the property as is equal to the proportion of the consideration contributed by him. The sums severally contributed must be for distinct interests or aliquot parts of the estate, and where two contribute funds, and the proportions do not appear, the presumption is that the proportions are equal.

3. SAME—*time when trust arises—not dependent on contract.* The trust must arise, if at all, at the time of the execution of the conveyance, and when the title vests in the grantee. It does not spring from the contract or agreement of the parties, but from their acts. It is not created by contract, but by implication of law, apart from contract.

4. SAME—*facts constituting.* Where the two facts, to-wit, payment of the purchase money by one, and conveyance of the title thereby

purchased to another, are found to exist, then the law so construes these two facts as to make them constitute a resulting trust, and for this reason such a trust is said to arise by implication of law.

5. SAME—*may be shown by parol evidence.* A resulting trust may be established by parol evidence, and the material circumstance to be shown by such parol evidence is the source of the consideration paid for the land.

6. SAME—*burden of proof and character of evidence.* The burden of proof is upon the party seeking to establish a resulting trust, and he must prove that the alleged *cestui que trust* paid the purchase price, and such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of payment by the alleged beneficiary beyond a reasonable doubt.

7. SAME—*proof of. by admission.* The admissions of the nominal purchaser and grantee are held to be competent evidence to establish a resulting trust; but such admissions are to be received with great caution, and are frequently entitled to but little weight.

8. SAME—*admissions showing—distinction.* There is a clear distinction between proof of the declaration of the grantee to the effect that he holds the title for another or has agreed to convey to another, and his declarations or admissions to the effect that another person's money was paid for the land. Declarations of the latter class are entitled to more weight than those of the former class, especially when they are corroborated by circumstances and attended by proof of some previous arrangement under which the money was advanced.

9. SAME—*sufficiency of admissions to show.* The admissions of the grantee in the deed, on repeated occasions and to different persons, that the money of the *cestui que trust* was paid for the land, are entirely sufficient to clearly establish that fact.

10. Although verbal declarations of a party are not competent to prove a contract to give another an interest in land held by him, they are competent, in connection with other evidence, to prove that he purchased the land with money in part belonging to such other person, and the extent of that part; and the death of the nominal purchaser does not affect the admissibility of such parol testimony, whatever effect in may have on its weight.

11. RESULTING TRUST—*in favor of partner.* Where two brothers live together, and work together for the common store, and agree to have an equal interest in their mutual labors and the property thereby purchased, one brother, in paying money derived from the proceeds of their joint property and mutual labors, for the purchase of land, taking the title in his own name, will be regarded as the agent and trustee of the other.

12. SAME—*as to a part of land bought with partnership money.* Where one of two brothers, partners, bought a quarter section of land with funds belonging to the firm, and took a deed therefor to himself, and the grantee took possession of the north half thereof, it was *held,* that the other partner might have a resulting trust declared in his favor as to the south half of the tract. His half of the price of the whole tract was held to have been used by the grantee in the purchase of such eighty-acre tract.

13. SAME—*laches as a bar.* A resulting trust may be barred by lapse of time or *laches* on the part of the supposed *cestui que trust;* but no certain time can be fixed within which the application for the enforcement of the trust should be made. What lapse of time will operate as a bar, must necessarily be determined by the equitable discretion of the court, and will depend upon the nature and circumstances of each case.

14. TRUSTEE—*measure of his liability on an accounting for rents and profits.* Where a trustee has been guilty of fraud, misconduct or willful default, he will be chargeable, on an accounting, with what might have been received from the property by the exercise of reasonable care and prudence. But where the trustee has acted in good faith, a court of equity will only hold him accountable for what he has actually received, and will not charge him with the proceeds or profits which he might have received.

15. LACHES—*when a bar to the enforcement of a resulting trust.* Lapse of time will not ordinarily be regarded as a bar to a bill to declare and enforce a resulting trust, where there has been no adverse possession of the land by the nominal purchaser, and when he has not repudiated or disavowed the trust, but has admitted it, and when an excuse for or explanation of the delay is furnished by the circumstances of the case or the relations of the parties.

16. SAME—*not imputable to a lunatic.* A lunatic can not be held accountable for any apparent negligence, *laches* or delay, in seeking redress through the courts, or otherwise, for any wrong that may have been done him with respect to his property, and he is not affected by the Statute of Limitations, which, but for the lunacy, would bar his right.

17. PARTITION—*by parol.* A parol partition of land must be followed by possession in conformity therewith, so as to authorize one of the co-tenants to file a bill against the other for a conveyance of the legal title, according to the terms of the partition.

18. PARTNERSHIP—*how shown.* As between partners themselves, the partnership may be shown by their conduct, the mode in which they have dealt with each other, and the mode in which each has, with the knowledge of the other, dealt with other people.

APPEAL from the Circuit Court of Carroll county; the Hon. JOHN D. CRABTREE, Judge, presiding.

This is a bill, filed on November 24, 1890, in the Circuit Court of Carroll County by the appellee, Thomas Van Buskirk, an insane person suing by his next friend, against the appellants, Clarissa Van Buskirk, the widow, and Frank Van Buskirk, the adopted son and only heir, of Jesse Van Buskirk, deceased, for the purpose of having a resulting trust declared in favor of the complainant in a certain tract of 80 acres, described as the W. $\frac{1}{2}$ S. W. $\frac{1}{4}$ Sec. 14, etc., for an accounting of the rents and profits of said land received by the defendants since the decease of said Jesse, for a conveyance of said 80 acres by the defendants to the complainant, and for such other relief as equity may require, etc. The defendants filed answers denying the material allegations of the bill, charging *laches*, and pleading the statute of limitations, and, also, the statute of frauds. The decree of the Circuit Court was in accordance with the prayer of the bill, and the present appeal is prosecuted from that decree.

Jesse and Thomas Van Buskirk were brothers. They came to Carroll County in 1845 or 1846. On May 18, 1846, each entered 160 acres, Jesse the N. E. $\frac{1}{4}$ Sec. 15, and Thomas the S. E. $\frac{1}{4}$ Sec. 15. East of N. E. $\frac{1}{4}$ Sec. 15 was W. $\frac{1}{2}$ N. W. $\frac{1}{4}$ Sec. 14, and East of S. E. $\frac{1}{4}$ Sec. 15 was W. $\frac{1}{2}$ S. W. $\frac{1}{4}$ Sec. 14. On May 15, 1848, Jesse entered said 160 acres in section 14. It is claimed in the bill, that in 1848 the two brothers, who were both unmarried, were partners in the farming business; that the 160 acres were purchased with partnership funds; that there was an agreement between them by the terms of which Jesse was to enter the 160 acres with partnership money, and the title to the north 80 acres, or W. $\frac{1}{2}$ N. W. $\frac{1}{4}$ 14, should be taken in Jesse's name, and the title to the south 80 acres, or the W. $\frac{1}{2}$ S. W. $\frac{1}{4}$ 14, should be taken in the name of Thomas; that Jesse went to Dixon on May 15,

1848, and entered both tracts in his own name, instead of entering the south 80 acres in the name of Thomas. The south 80 acres is the tract here in dispute, the defendants claiming to own the tract as heirs of Jesse Van Buskirk, deceased, and the complainant claiming that said Jesse in his life-time held the title in trust for him, the complainant, and that the defendants, as the heirs, or widow and heir, of the deceased, now hold said title in trust for the complainant.

Mr. J. M. Hunter, and Messrs. Eaton & Hoffman, for the appellants:

A resulting trust can only arise from the original transaction, and at the time it takes place, and at no other time. The funds must be advanced or invested at the time the purchase is made. A resulting trust must arise, if at all, at the time of the execution of the conveyance. *Reed* v. *Reed,* 135 Ill. 482; *Alexander* v. *Tams,* 13 id. 221; *Perry* v. *McHenry,* id. 227; *Botsford* v. *Burr,* 2 Johns. Ch. 415; Perry on Trusts, 323.

The proof to establish a resulting trust must be satisfactory. *Reed* v. *Reed,* 135 Ill. 482; *Mahoney* v. *Mahoney,* 65 id. 407; *Heneke* v. *Floring,* 114 id. 554; *St. Patrick's Catholic Church* v. *Daly,* 116 id. 76.

In that class of cases in which a trust can be established by parol, such evidence is not regarded with favor, and the court will not act upon it if it be not strong and irrefragable, or if it be contradicted by other testimony. *Reeve* v. *Strawn,* 14 Ill. 94; *Lantry* v. *Lantry,* 51 id. 458.

The evidence to sustain a resulting trust must be very clear, and is always received with great caution. There will be no security to the legal title if it could be unsettled by anything less than clear and satisfactory proof. *Corder* v. *Corder,* 124 Ill. 229; *Enos* v. *Hunter,* 4 Gilm. 218.

Payment of money at the time of purchase must be clearly proved. 4 Kent's Com. 305; *Loomis* v. *Loomis,* 28 Ill. 456.

Courts will not enforce resulting trusts after great lapse of time or *laches* on the part of the supposed *cestui que trust.* Especially when land has been occupied with knowledge of the latter, the claim should be asserted within seven years. Perry on Trusts, sec. 141; *McDonald* v. *Stow,* 109 Ill. 40; *Breit* v. *Yeaton,* 101 id. 245; *Castner* v. *Walrod,* 83 id. 171; *Freeman* v. *Kelley,* 1 Hoff. Ch. 90.

Where there is a co-partnership engaged in carrying on farming, all their equities should be adjusted before decree should be entered in favor of either party. *Carter* v. *Bradley,* 58 Ill. 101.

Constructive trusts resulting from partnerships, agencies, and the like, are subject to the Statute of Limitations. *Kane* v. *Bloodgood,* 7 Johns. Ch. 113; *Albretch* v. *Wolf,* 58 Ill. 190; *Quayle* v. *Guild,* 91 id. 378; *Farnum* v. *Brooks,* 9 Pick. 212.

A bill for an accounting is barred after a lapse of five years from the dissolution of co-partnership. *Askew* v. *Springer,* 111 Ill. 662; *Pierce* v. *McClellan,* 93 id. 245.

If the Statute of Frauds is set up as against a resulting trust resting in parol, its effect is inexorable on express trusts not in writing. Perry on Trusts, secs. 126, 135; *Hovey* v. *Holcomb,* 11 Ill. 660; *Greene* v. *Cook,* 29 id. 193; *Kane County* v. *Herrington,* 50 id. 237; *Holmes* v. *Holmes,* 44 id. 169; *Carpenter* v. *Davis,* 72 id. 17; *Sheldon* v. *Harding,* 44 id. 69.

With respect to verbal admissions, it may be observed they ought to be received with great caution. *Bragg* v. *Geddes,* 93 Ill. 60; *Corder* v. *Corder,* 124 id. 233; *Wallace* v. *Rappleye,* 103 id. 245; *Johnson* v. *Filson,* 118 id. 219; *Freeman* v. *Kelley,* 1 Hoff. Ch. 90; Greenleaf on Evidence, sec. 200.

The presumption is, that the grantee named in the United States patent, purchased the land with his own money. In order to overcome this presumption by parol testimony, the proof should be so convincing as to leave no reasonable doubt in the mind of the court. Before the title to real estate should be transferred upon the strength of parol testimony alone, the

facts upon which such change is asked should be so convincing as to leave no reasonable doubt in the mind of the court. *Reeve* v. *Strawn,* 14 Ill. 100.

A resulting trust can not be declared upon evidence of declarations made by the holder of the legal title to outside parties in chance conversations, which the witnesses had no reason to recollect from interest in the subject matter, which may have been imperfectly heard or inaccurately remembered, perverted, or altogether fabricated testimony, and therefore impossible to be contradicted. *Purcell* v. *Miner,* 4 Wall. 513; *Page* v. *Page,* 8 N. H. 187.

The relationship of witnesses, the manner in which their testimony is educed, the improbability from the lapse of time, the want of attention to and interest in conversations heard many years before, should all be considered by the court. *Wallace* v. *Rappleye,* 103 Ill. 245.

Messrs. D. and T. J. & J. M. SHEARE, and Mr. HENRY McKAY, for the appellee:

Parol evidence is admissible both to create and rebut the presumption of a resulting trust, and to establish the trust in contradiction of the terms of a deed, and, even after the death of the nominal purchaser, against his heirs; and it may be established by circumstantial evidence, and parol declarations of the deceased trustee. Bispham's Eq. 123, 124; Perry on Trusts, sec. 137; 2 Pomeroy's Eq. 612, note 2, 616, secs. 1043, 1048; 1 Lewin on Trusts, 168; *Reybold* v. *Reybold,* 20 Pa. St. 308; *Boyd* v. *McLean,* 1 Johns. Ch. 582; *Mahoney* v. *Mahoney,* 65 Ill. 406; *Ryder* v. *Emrich,* 104 id. 470; *Donlin* v. *Bradley,* 119 id. 412; *Corder* v. *Corder,* 124 id. 229; *Reynolds* v. *Sumner,* 126 id. 58.

The rule is universal that the heir or devisee of the trustee holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary. It is not necessary that such heir be guilty of posi-

tive fraud, or should actually intend a violation of the trust obligation; it is sufficient that he acquires property upon which a trust is, in fact, impressed. 2 Pomeroy's Eq. sec. 1048; *Smith* v. *Ramsey*, 1 Gilm. 373.

Clarissa Van Buskirk and Frank W. Van Buskirk are not innocent purchasers for value, without notice of any interest in this south eighty. The only interest they claim therein is as heirs, the one as the widow without children, and the other as an adopted child of Jesse. They, therefore, can take and hold only what their ancestor could, and stand in no other or better right than could Jesse, were this bill filed against him. The same evidence which would sustain a bill against him, if alive, will sustain it against these defendants. What estops him estops defendants. *Smith* v. *Ramsey*, 1 Gilm. 373.

Where one contributes funds, and the proportions do not appear, the presumption is that the proportions are equal. Perry on Trusts, sec. 132; Abbott on Trial Evidence, 229; Lindley on Partnership, 349, note 1; *Legare* v. *Peacock*, 109 Ill. 94; *Gould* v. *Gould*, 6 Wend. 267.

No particular form is necessary to create a partnership. As between the partners, the evidence is their conduct,—the mode in which they have dealt with each other and third persons. Lindley on Partnership, 80, 84, 89; 1 Greenleaf on Evidence, sec. 112.

Partnership may be shown by admissions of the partners. *Brown* v. *Rutherford*, 60 Ill. 43; *Gordon* v. *Bankard*, 37 id. 147.

It is enough to show that the complainant and the others were partners, and that the money paid for the lands was the money of the firm, without showing whether the money was equally contributed by the partners, or otherwise. *Tract* v. *Oliver*, 2 McLean, 267.

The mere fact that the property in question was purchased by one partner in his own name, is immaterial, if it was paid for out of partnership money. Lindley on Partnership, 324;

Abbott on Trial Evidence, 228; *Fairchild* v. *Fairchild,* 64 N. Y. 471.

Where the individual cattle of one partner went into the purchase of real estate, it became a trust fund, and the partner purchasing the land with that and partnership funds, and taking title to himself alone, was but a trustee, and a resulting trust was created, notwithstanding he acted innocently, and without fraud. *King* v. *Hamilton,* 16 Ill. 197.

If the title stands in the name of one of the partners, he will be held as trustee of the partnership, and made to account to the other partners, according to their several rights and interests. *Railsback* v. *Lovejoy,* 116 Ill. 442; *Faulds* v. *Yates,* 57 id. 416; *Coder* v. *Huling,* 27 Pa. St. 84; *Trephagan* v. *Burt,* 67 N. Y. 30; *Sellinder* v. *Pullman,* 30 Cal. 490; Lindley on Partnership, 334.

Where one purchases land with his and another's money, and takes title to himself, under an express agreement to convey one-half to the other, a resulting trust will arise, notwithstanding the agreement. *Smith* v. *Smith,* 85 Ill. 189; *McNamara* v. *Garrity,* 106 id. 384; *Harris* v. *McIntyre,* 118 id. 275; *Reynolds* v. *Sumner,* 126 id. 58.

The trust arises, not out of any contract, but upon proof of ownership of the funds in the purchase, and does not depend upon a contract. The Statute of Frauds has no application. A contract may afford evidence of the relation between the parties and the character of the transaction. *Reynolds* v. *Sumner,* 126 Ill. 58; *Harris* v. *McIntyre,* 118 id. 276.

The same evidence which would make it partnership property for the purpose of paying debts and adjusting equities between the partners, would establish it for the purpose of final division. *Fairchild* v. *Fairchild,* 64 N. Y. 471; *Coder* v. *Huling,* 27 Pa. St. 84.

Where land is purchased with the money of one person and the deed is taken in the name of another, a trust results, by operation of law, in favor of the person whose money is used.

Perry on Trusts, 143; 2 Washburn on Real Prop. 441; *Mathis* v. *Stufflebeam,* 94 Ill. 481; *Harris* v. *McIntyre,* 118 id. 287; *Reynolds* v. *Sumner,* 126 id. 69.

Mr. Justice Magruder delivered the opinion of the Court:

. About May 15, 1848, Jesse Van Buskirk became the holder, by assignment to himself, of a military land warrant, under which he located and entered on that day 160 acres of land in his own name; and a patent was issued to him on September 1, 1849. The tract of 160 acres lay east of 320 acres then owned by himself and his brother, Thomas· Van Buskirk. He owned the north half of the 320 acres and his brother, Thomas, the south half thereof. The present bill seeks to establish a resulting trust in the south 80 acres of the 160 acres, entered on May 15, 1848, in favor of Thomas Van Buskirk. It is claimed by the appellee, that, although the legal title to the 160 acres was taken in the name of Jesse and was in him at the time of his death, the consideration for the purchase of the south half thereof was paid by Thomas.

Where one of two parties, who are strangers to each other, takes the title to a piece of land, but the other advances the purchase money, a resulting trust will exist in favor of the latter, and the holder of the legal title will be regarded as the trustee of the party furnishing the money. (*Mahoney* v. *Mahoney,* 65 Ill. 406). Where two persons together advance the price, and title is taken in the name of one of them, a trust results in favor of the other to such proportion of the property as is equal to the proportion of the consideration contributed by him. (*Smith* v. *Smith,* 85 Ill. 189; *McNamara* v. *Garrity,* 106 id. 384; *Springer* v. *Springer,* 114 id. 551). The sums severally contributed must be for distinct interests or aliquot parts of the estate. (*Reed* v. *Reed,* 135 Ill. 482; *Stephenson* v. *McClintock,* 141 id. 604). Where two contribute funds and the proportions do not appear, the presumption is

that the proportions are equal. (1 Perry on Trusts, sec. 132). The trust must arise, if at all at the time of the execution of the conveyance, and when the legal title vests in the grantee. (1 Perry on Trusts, sec. 133 ; *Reed* v. *Reed, supra; Stephenson* v. *McClintock, supra*). Such a resulting trust does not spring from the contract or agreement of the parties, but from their acts. It is not created by contract, but by implication of law apart from contract. (1 Perry on Trusts, sec. 134; *Donlin* v. *Bradley,* 119 Ill. 412; *Sheldon* v. *Harding,* 44 id. 68; *Stephenson* v. *Thompson,* 13 id. 186; *Bruce* v. *Roney,* 18 id. 67; *Perry* v. *McHenry,* 13 id. 227; *Lear* v. *Chouteau,* 23 id. 39). When the two facts, to-wit: payment of the purchase money by one, and conveyance of the title thereby purchased to another, are found to exist, then the law so construes those two facts as to make them constitute a resulting trust, and, for this reason, such a trust is said to arise by operation of law. (*Smith* v. *Smith, supra; Donlin* v. *Bradley, supra*). The beneficial estate follows the consideration, and attaches to the party from whom the consideration comes. (2 Pom. Eq. Jur. sec. 1037). Since the whole foundation of resulting trusts of this class is the ownership and payment of the purchase money by one when the title is taken in the name of another, it follows that such trusts may be established by parol evidence. (1 Perry on Trusts; sec. 137; 2 Pom. Eq. Jur. sec. 1040; *Donlin* v. *Bradley, supra*). Indeed, our statute of frauds expressly provides that "resulting trusts or trusts created by construction, implication or operation of law need not be in writing, and the same may be proved by parol." (Rev. Stat. chap. 59, sec. 9; 1 Starr & Cur. Ann. Stat. page 1200).

The material circumstance to be shown by such parol evidence is the source of the consideration paid for the land. The burden of proof is upon the party seeking to establish the trust, and he must prove that the alleged *cestui que trust* paid the purchase price. (10 Am. & Eng. Enc. of Law, page 29, and cases cited in notes). Such evidence must be "clear,

strong, unequivocal, unmistakable," and must establish the fact of the payment by the alleged beneficiary beyond a doubt. (2 Pom. Eq. Jur. sec. 1040; *Green* v. *Dietrich*, 114 Ill. 636; *Heneke* v. *Floring*, 114 id. 554; *Mahoney* v. *Mahoney, supra*). The admissions of the nominal purchaser and grantee in the deed are held to be ·competent evidence upon this subject. (1 Perry on Trusts, sec. 137). Such admissions, however, are to be received with great caution, and are frequently entitled to little weight. (*Corder* v. *Corder*, 124 Ill. 229; 10 Am. & Eng. Enc. of Law, page 30, and cases cited in notes).

We think, however, that there is a clear distinction between proof of the declarations of the grantee to the effect that he holds the title for another, or has agreed to convey to another, and his declarations or admissions to the effect that another person's money was paid for the land. Declarations of the latter class are entitled to more weight than those of the former class, especially when they are corroborated by circumstances, and attended by proof of some previous arrangement under which the money was advanced. (10 Am. & Eng. Enc. of Law, page 30; 1 Perry on Trusts, sec. 137). The admission of a trustee, that he purchased certain property with the trust fund, is competent evidence to raise a resulting trust for the *cestui que trust* in that property. (1 Perry on Trusts, sec. 137, note 1 on page 156, referring to *Harrisburg Bank* v. *Tyler*, 3 Watts & S. 373). In *Ryder* v. *Emrich*, 104 Ill. 470, it was held that the admissions of the grantee in the deed on repeated occasions and to different persons, that the money of the *cestuis que trust* was paid for the land, were "entirely sufficient to clearly establish that fact." In *Stephenson* v. *McClintock, supra*, it was held, that although the verbal declarations of a party are not competent evidence to prove a contract to give another an interest in land held by him, they are competent, in connection with other evidence, to prove that he purchased the land with money in part belonging to such other person, and the extent of that part. The death of the nominal pur-

chaser does not affect the admissibility of such parol testimony, whatever effect it may have on its weight. (1 Perry on Trusts, sec. 138; *Ryder* v. *Emrich, supra*).

About 1845, Jesse and Thomas Van Buskirk settled upon the N. E. ¼ Sec. 15, entered in 1846 in Jesse's name, and the S. E. ¼ Sec. 15, entered in 1846 in Thomas' name. They are described as having lived together upon this tract in a dugout, or shanty, until some time in 1849 or 1850, when a house was built upon the N. E. ¼ Sec. 15. They lived in this house together until February 13, 1851, when Jesse was married. Thomas still continued to live with Jesse and his wife until they went to California in 1852, where they remained three years. During their absence Thomas lived in the house upon Jesse's north 160 acres with renters or tenants who also occupied it; and, while Jesse was away, looked after the latter's interests and attended to the farming business. After his brother's return Thomas continued to live with him until sometime in 1857, when he married, and built a house upon the S. E. ¼ Sec. 15, where he has ever since lived with his family.

Complainant examined twelve witnesses. Most of these witnesses are old men, over seventy years of age. They testify to conversations and transactions occurring many years before the date of their testimony, but their recollection of these earlier events appears to be clear and distinct. It would be unprofitable, nor is it necessary, to discuss and analyze their evidence in all its details. Their testimony satisfies us, that the two brothers, Thomas and Jesse, were partners in the ownership of their personal property, consisting mainly of cattle and horses from 1845 to about 1857, and that the 160 acres in section 14, which was entered by Jesse in May, 1848, was purchased by him with funds earned in their partnership business, if not with actual partnership funds. The fact of the partnership, and the fact of the purchase of the 160 acres with money earned in the carrying on of the part-

nership business, are proven by the repeated admissions of Jesse, and by the acts and conduct of the parties. They lived together as single men; they had their horses and cattle together, and fed them with hay, grain and straw belonging to both of them. They held themselves out as partners, and persons dealing with them regarded them as such. They had an auction sale of horses and sold them together as joint property. They sold hay, meat and wood in 1846 as being their partnership property. They bought supplies and permitted themselves to be charged as partners. Each, and one as well as the other, paid for articles purchased by them and for labor performed for them. As between partners themselves, the partnership may be shown by "their conduct, the mode in which they have dealt with each other, and the mode in which each has, with the knowledge of the other, dealt with other people." (1 Lindley on Part. marg. page 84). In *Bowen* v. *Rutherford,* 60 Ill. 41, we said: "Whether persons are partners *inter se* or *quoad* third parties, must be established by facts; by the acts of the party, or by circumstantial evidence, which induce the belief of a partnership." There is no evidence that these brothers had any other money than that which was thus earned in the prosecution of their joint business of operating a stock farm. It has been held, that even such circumstantial evidence, as that the means of the nominal purchaser were so limited that it was impossible for him to pay the purchase money, is admissible for the purpose of showing, in connection with other evidence, the payment of the purchase money by the party seeking to establish the resulting trust. (1 Perry on Trusts, sec. 137, and cases cited in note 3 on page 155). Where two brothers live together, and work together for the common store, and agree to have an equal interest in their mutual labors and the property thereby purchased, one brother in paying money, derived from the proceeds of their joint property and mutual labors, for the purchase of land, will be regarded as the agent and

trustee of the other.     *(Stephenson* v. *McClintock, supra; King*
v. *Hamilton,* 16 Ill. 190).

In connection with these acts and circumstances showing
the existence of the partnership, are the admissions of Jesse
made to nearly a dozen witnesses, sometimes in the presence
of his brother, sometimes in his absence, that the 160 acres
was bought with money earned in their common business and
by their joint labors.     The declarations and admissions thus
made are not overcome by the evidence introduced by the de-
fendants below.     *(Ryder* v. *Emrich* 104 Ill. 470).

It is claimed, that the effect of the evidence showing a pur-
chase with partnership funds is to give each of the brothers
title to an undivided one half of the one hundred and sixty
acres, and that, as the present bill is not for a partition of the
160 acres, but to establish a resulting trust in the south half
thereof, the decree below is erroneous as resting upon a parol
agreement to convey the south half, which is in violation of
the statute of frauds.     There is much force in this position.
*(Smith* v. *Smith, supra; Reynolds* v. *Sumner,* 126 Ill. 58).     A
somewhat similar question was presented in *McNamara* v.
*Garrity,* 106 Ill. 384, where "Garrity was to pay one fourth of
the purchase money and McNamara was to pay the other
three fourths thereof, and one fourth of the land, in a ten
acre strip off the west side thereof, was to belong to Garrity
and the balance was to belong to McNamara." It was there
held, that there was a resulting trust in favor of Garrity as
to his part of the tract, and that the statute of frauds had no
application.     It appears, that in that case Garrity paid his
one fourth of the price and, with the consent of McNamara
to whom the legal title had been conveyed, took possession of
his ten acres, fenced and cleared it, and was in the actual
possession of it for more than twenty years.     Here, the evi-
dence shows, that Jesse Van Buskirk took possession of the
north 80 acres.     Between 1865 and 1879, it is shown that the
south 80 acre tract was broken, that Thomas and his family

cultivated parts of it for several years, and that a lease of it was made by Thomas for three years with Jesse's consent to a tenant who cultivated it during that time. We do not deem it necessary, however, to hold that there was a parol partition between the two brothers. Such a partition must be followed by a possession in conformity therewith, so as to authorize one of the co-tenants to file a bill against the other for a conveyance of the legal title according to the terms of the partition. (*Tomlin* v. *Hilyard*, 43 Ill. 300; *Shepard* v. *Rinks*, 78 id. 188; *Sontag* v. *Bigelow*, 142 id. 143). Whether the possession, taken by each of the brothers of the two several tracts, was such an exclusive possession as to amount to a parol partition, (17 Am. & Eng. Enc. of Law, page 668 and cases cited in notes), or not, we think the evidence warrants the conclusion, that Thomas contributed his one half of the purchase money towards the purchase of the south 80 acres. It is proven, that the price, at which the latter tract was entered, was $1.25 per acre, or $200.00 for the whole. The land warrant was what was known as a Mexican land warrant. The Act of Congress of February 11, 1847, (U. S. Stat. at Large, vol. 9, page 125), under which it was issued, entitled the soldier to receive a warrant for 160 acres to be located "in one body." This was probably the reason why one entry was made for the 160 acres, instead of two entries each for 80 acres. Although the $200.00 was earned by their joint efforts, yet the arrangement was that the $100.00 belonging to Thomas should be applied to the purchase of the south 80 acres, and the other $100.00 belonging to Jesse should be applied to the purchase of the north 80 acres. Hence, under the reasoning in the *McNamara* case, a resulting trust arose in behalf of Thomas in the south 80 acres, and not in the undivided one half of the 160 acres. The case presented is not that of a parol agreement to divide land, but of a contribution of the one half of a specific fund to buy a particular part of a certain tract.

It is further claimed, that the appellee has been guilty of such *laches* that he is not entitled to relief. Undoubtedly resulting trusts may be barred by lapse of time, or *laches* on the part of the supposed *cestui que trust*. But no certain time can be fixed within which the application for the enforcement of the trust should be made. What lapse of time will operate as a bar must necessarily be determined by the equitable discretion of the court, and will depend upon the nature and circumstances of each case. Lapse of time will not ordinarily be regarded as a bar, where there has been no adverse possession of the property by the nominal purchaser, and where he has not repudiated or disavowed the trust but has admitted it, and where an excuse for, or explanation of, the delay is furnished by the circumstances of the case or the relations of the parties. (1 Perry on Trusts, sections 141, 228, 229; *Harris* v. *McIntyre*, 118 Ill. 275; *Reynolds* v. *Sumner*, 126 id. 58; *Ryder* v. *Emrich*, 104 id. 470; *McDonald* v. *Stow*, 109 id. 40). Thomas Van Buskirk lived in the most intimate business and family relations with his brother, Jesse, from 1848 to 1857, they occupying the same house and laboring for and with each other. After Thomas began to live in his own house in 1857, his brother's farm adjoined his own, their houses were not more than a mile apart, they saw each other almost every day, were on the most friendly terms, and aided each other in the cultivation of their respective farms, and in the gathering and sale of the products thereof. During all this time, whenever the subject was alluded to, Jesse admitted that the south 80 acres belonged to his brother, and promised to deed it to him, and gave excuses for not doing so. There is no reliable evidence, that Jesse ever took or held possession of any part of the south 80 acres during his life time. As early as 1865 according to some of the witnesses, certainly from and after 1870, the mind of Thomas began to fail, so that he was incapacitated from attending to business, and was unable properly to assert his own rights. Finally on May 16,

1878, he was declared a lunatic by the county court of Carroll County, and has been a lunatic ever since. No conservator seems to have been appointed for his estate, but this suit has been brought for him by a next friend. (*Speck* v. *Pullman Palace Car Co.* 121 Ill. 33). His rights cannot be prejudiced by the fact, that such next friend did not bring the suit immediately after the declaration of lunacy, or immediately after the death of Jesse Van Buskirk, which occurred on June 3, 1879. A lunatic cannot be held accountable for any apparent negligence, *laches* or delay in seeking redress through the courts, or otherwise, for any wrong that may have been done him with respect to his property, and he is not affected by statutes of limitation which, but for the lunacy, would bar his rights. (*Dodge* v. *Cole*, 97 Ill. 338).

After the Court below found that a resulting trust existed in favor of the complainant, and that the legal title was held in trust for him, and that he was entitled to a deed of the land, it was referred to a master in chancery to take an account of the rents and profits of said 80 acres from the time of the death of said Jesse to the date of the accounting. The master reported that the fair annual cash rental value of the premises was a certain sum per acre, and upon the basis of this finding it was decreed that the widow pay $2520.00 and the adopted son $1400.00.

We think that this portion of the decree is erroneous. It is equivalent to compelling the defendants to pay what might have been received from the property by the exercise of reasonable care and prudence. Such is the basis of accounting where the trustee has been guilty of fraud, or misconduct, or willful default. But where a trustee has acted in good faith, a court of equity will only hold him accountable for what he has actually received, and will not charge him with proceeds or profits which he might have received. (2 Pom. Eq. Jur. sec. 1058 and note; *Barnes* v. *Taylor*, 30 N. J. Eq. 7; *Greenwood's Appeal*, 92 Penn. St. 181; Hill on Trustees, (Bispham)

marg. page 523). There is no evidence that the defendants were in any way at fault, or that they had any notice or knowledge that the property was held in trust by the deceased grantee in the patent. As the legal title was in the deceased at the time of his death, it does not appear that the defendants did not in good faith regard themselves as owners of the property by inheritance or descent. Hence, they should only have been required to account for the rents and profits actually received by them during the period named, less taxes paid by them, and necessary repairs made by them.

The decree is affirmed in so far as it requires the legal title to the land to be conveyed to the complainant, but reversed as to the amounts decreed to be paid upon the accounting, and the cause is remanded to the Circuit Court with directions to order an accounting to be stated upon the basis herein indicated.

*Decree affirmed in part and in part reversed.*