## Johanna Frorer et al., Executors, Defendants in Error, v. C. A. Nicholson, Plaintiff in Error.

1. TRUSTS—*where stockholder of corporation acts as trustee.* Where in an action by an executor on a note given testator, a stockholder in a mining corporation, by defendant, another stockholder, for money which testator advanced as defendant's share of a loan raised by the stockholders for the corporation, it is shown that the corporation gave a mortgage to testator covering all its property, the mortgage was foreclosed, the property bid in by testator, and that the stockholders continued to advance money for the protection of the mining property until it was found to be worthless, there is sufficient evidence to show that deceased was acting as trustee for the other stockholders, and defendant is liable on his note.

2. TRUSTS—*where several persons advance the price of property.* Where two or more persons advance the price and title is taken in the name of one of them, a trust results in the favor of the others to such proportion of the property as is equal to the proportion of the consideration contributed by each.

3. TRUSTS—*resulting trust.* A resulting trust arises by implication of law from the acts of the parties.

Error to the Circuit Court of Logan county; the HON. THOMAS M. HARRIS, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed April 18, 1913.

BLINN & COVEY, for plaintiff in error.

KING & MILLER, for defendants in error.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

In 1898, A. B. Nicholson, C. A. Nicholson, Frank Frorer, T. T. Beach, Joseph Hodnett, S. A. Foley, J. T. Hoblit, Frank Hoblit, John F. Mundy and W. A. Watkins, residing in Lincoln, Illinois, became interested as purchasers of stock in the Rollins Mining Co., a corporation, doing business in the state of Utah. There were other persons largely interested as stockholders in this corporation but the above named stock-

holders purchased their stock together and acted together thereafter in the transactions concerned in this suit. Of the stock owned by these Lincoln stockholders, the Nicholsons together owned two-tenths; Frorer, one-tenth; Beach and Hodnett together, one-tenth; J. T. Hoblit, two-tenths; Frank Hoblit, one-tenth; Mundy, one-tenth; and Watkins, one-tenth, and they co-operated together in advancing money for the development and other expenses on the basis of these proportions. For the purpose of development of the company's mining property these Lincoln stockholders in 1899, mutually agreed to raise and loan to the company the sum of $20,000, this amount to be raised and advanced or loaned by said persons in proportion to their several interests. This made the amount to be paid in by A. B. and C. A. Nicholson, the sum of $4,000 and this amount was furnished by Frank Frorer, who took a note signed by the Nicholsons for $4,000 dated May 15, 1899, due on or before two years after date with interest at six per cent per annum from date until paid, payable to the order of Frank Frorer and stating that it was given to idemnify said Frank Frorer for the share of the Nicholsons in the $20,000 advanced to the Rollins Mining Co., "for which he holds collateral notes of the R. M. Co." Like notes were given by the other Lincoln stockholders to Frorer and he took notes executed by the Rollins Mining Co., to secure himself and the other stockholders for the amounts so advanced. The Rollins Mining Co. also gave to Frank Frorer a mortgage covering all the property of the corporation, to secure a note for $50,000, which recited that the note and mortgage were given upon the "express stipulation and agreement that the same is to be held as collateral security, only, for the payment of the notes of said Rollins Mining Company, executed to said Frank Frorer, or others, for advances made to the Rollins Mining Company in and about the development and

operation of its mines," and containing the stipulation that this note shall stand as security for all such advances whether made by Frorer or others. Similar recitals are also in the mortgage. Thereafter Frorer advanced to the Rollins Mining Co., possibly without the written consent of the Nicholsons, further sums until the entire amount was $50,000.

The Rollins Mining Co., after expending the entire sum advanced as aforesaid, completely failed in its efforts to develop their property into a producing mine. It was in default in the payment of interest on its loans and in the payment of the principal or any portion thereof. It had abandoned its attempts at development and further sums were being advanced by the Lincoln stockholders to pay the salary of a watchman at the mine and other expenses connected with the protection of the property. The mortgage was foreclosed and the property bid in by Frorer in July, 1903, for the sum of $58,479.09, being the full amount of the debt and costs and he thereafter obtained a deed for the same in his own name.

The Lincoln stockholders continued to advance money for the protection of the mining property until some time in 1908, when it became apparent that the mine was practically worthless and they stopped making any further advances.

In the meantime Frank Frorer died; letters of administration were taken out in Utah on his estate by persons having claims for watchman's salary and current expenses in connection with this mining property, and it was sold to satisfy these claims, for the sum of $1,328.30, the amount of the claims and costs, to Stephen A. Foley, one of the parties in interest.

This suit was brought by the executors of Frank Frorer to recover upon the note for $4,000, given by A. B. and C. A. Nicholson as above stated, and which has not been paid. A trial before a jury resulted in a verdict for the plaintiff for $4,000, the principal of the

said note on which judgment was rendered against the Nicholsons who sued out a writ of error to review that judgment. The case was submitted and taken under advisement at the October term of this court. A. B. Nicholson died since the case was taken under advisement, his death has been suggested on the record, and this suit is now prosecuted by C. A. Nicholson, surviving plaintiff in error.

The defense urged in the trial court by plaintiff in error is that this $4,000 note was collateral to the notes of the Rollins Mining Co., held by Frorer, and that the purchase at the foreclosure sale of the entire property of the Rollins Mining Company by Frorer in his own name for the full amount of the debt and costs extinguished the debt of the Rollins Mining Company, and entitled the Nicholsons to the return of their $4,000 note, held as they claim as collateral.

It appears from the evidence that a large number of the stockholders of the Rollins Mining Company, on March 22, 1901, entered into an agreement to turn over to the Company three-tenths of the entire amount of the stock held by them severally into the treasury of the Company to be treated as treasury stock and to be sold by the Company to raise money for the purpose of paying the current expenses of caring for the property, to pay interest accrued and accruing upon the indebtedness of the Company and to develop the properties of the Company and pay its indebtedness. This agreement bears, among the others, the signature of Charles A. Nicholson and of "A. B. Nicholson by C. A. N.," and was given in consideration of a further agreement of the same date signed by the group of Lincoln stockholders, except A. B. Nicholson, describing said notes as being "held by the undersigned" and remaining unpaid, together with the accrued interest thereon. This agreement provides that in consideration of the performance of the provisions of the first agreement, the maturity of the note and mortgage referred to therein

should be extended for two years from and after June 5, 1901, provided that all accrued interest and interest to accrue to June 5, 1902, should be paid on or before June 5, 1902.

It also appears that the Lincoln stockholders long after the foreclosure and sale considered the mine valuable property and that they met and considered propositions for the sale of the same; that C. A. Nicholson, as appears from his own evidence, was personally present at one of these meetings held in 1904 or 1905, although some of the stockholders fix the date of that meeting as in 1906 or 1907; that a contract for the sale of the premises was entered into in 1907, for the sum of $100,000, but which was not carried out, and that it was not until it was found that the mine was worthless that the Nicholsons claimed that they had no interest in it.

The proof further shows that after the date of the master's deed to Frorer, January 9, 1904, the Nicholsons continued to pay interest on their share of the sum advanced by Frorer; that they continued to pay their share of the expense money and that the expenses of Hodnett and Hoblit, who were in Utah personally looking after the foreclosure proceedings, were paid out of the common fund contributed *pro rata* by the Nicholsons and their associates.

Other acts of the parties subsequent to the foreclosure sale show that it was considered by the stockholders and by Frorer before his death, that the property belonged to the group of Lincoln stockholders and that Frorer was but a trustee for them.

Where two or more persons advance the price and title is taken in the name of one of them, a trust results in favor of the others to such proportion of the property as is equal to the proportion of the consideration contributed by each. *Van Buskirk* v. *Van Buskirk*, 148 Ill. 9, and cases there cited.

Some of the parties for whom Frorer had made

advances in the same manner as he did for the Nicholsons, and whose notes he had taken as he took Nicholsons', paid their notes; these notes were surrendered to the makers and their proportionate interest in the premises conveyed to some of them by Frorer in his lifetime, and to one by his executors after his death.

What Frorer did in the foreclosure proceedings was for the benefit of the Lincoln stockholders and not for his individual benefit. The trusteeship of Frorer arose, not from the contract or agreement of the parties but from their acts. *Van Buskirk* v. *Van Buskirk*, 148 Ill. 9. This rule is also announced in *Lewis* v. *McGrath*, 191 Ill. 401, at page 407, where the court say: "In *Dorman* v. *Dorman*, 187 Ill. 154, we say (p. 158): 'A resulting trust arises by implication of law, from the acts of the parties.' (*Donlin* v. *Bradley*, 119 Ill. 412; *Van Buskirk* v. *Van Buskirk*, 148 Ill. 9; 1 Perry on Trusts, sec. 134)."

If the property had proved valuable the group of Lincoln stockholders would have been entitled to their proportionate share in the profit arising from a sale of the same. Frorer was acting as trustee for them and when this property proved to be almost worthless and consequently a loss to the stockholders it naturally follows that there was nothing to be applied upon the debts of anyone else.

Frorer held the note of the Nicholsons, not as collateral to the notes of the Rollins Mining Company, but as a note indemnifying him for advances made by him on their account and for which he held as collateral the notes of the Rollins Mining Company.

Complaint is made by plaintiff in error that instructions were given which were not applicable to the declaration as shown by the abstract. The special count abstracted by plaintiff in error, which sets up an express trust was withdrawn, and the suit was tried upon the second additional special count which avers a resulting trust, the special count which declared upon the

instrument as a note without pleading the effect of the memoranda, and the common counts. These counts are not abstracted by counsel for plaintiff in error, but are shown in the additional abstract. The instructions complained of were proper under the second additional special count. Finding no error in the record the judgment is affirmed.

*Affirmed.*