EMMA E. LORD *et al.* Appellees, *vs.* GENEVIEVE REED, Appellant.

*Opinion filed April 18, 1912—Rehearing denied June 6, 1912.*

1. UNDUE INFLUENCE—*undue influence is not presumed from fact of illicit relations.* Undue influence by an unmarried woman over a married man will not be presumed, as a matter of law, even though their relations may be illicit; but proof of such relations requires a close scrutiny of their acts in determining the question whether a gift of land from him to her was the result of the donor's free choice or the undue influence of the donee.

2. SAME—*burden of proving undue influence is upon party asserting it.* Undue influence may be proved by circumstantial evidence and direct proof is not essential, but the burden of proving undue influence is upon the one who asserts it.

3. SAME—*the proof must show that influence overcame donor's free will.* To justify setting aside a gift of land upon the ground of undue influence by the donee over the donor, it must appear

expressly, or by fair inference from the circumstances proven, that such influence was so exercised as to deprive the donor of his free will and cause him to make a disposition of the property which otherwise he would not have made.

4. SAME—*what not ground for setting aside gift of land.* The fact that the evidence has a tendency to show that the relations between the donor and donee were illicit does not justify setting aside a gift of land upon the ground of undue influence by the donee, where the evidence also shows that the donor was the dominating factor in the negotiations for the purchase of the land, and in the management thereof from its purchase until his death.

5. TRUSTS—*a resulting trust may be established by parol evidence.* A resulting trust arises, not from the contract or agreement of the parties, but from their acts, and such trust may be established by parol evidence.

6. SAME—*resulting trust must arise, if at all, when title vests.* A resulting trust must arise, if at all, at the moment the legal estate vests, and no payment made will create a resulting trust unless at the moment the title passes the trust results from the transaction itself.

7. SAME—*payment of consideration merely raises prima facie presumption in favor of resulting trust.* Payment of the consideration merely raises a *prima facie* presumption in favor of a resulting trust, and it may be shown, to rebut such presumption, that it was the intention of both parties that the grantee should take the beneficial interest.

8. SAME—*intention that grantee should take beneficial interest need not be proved by express declarations.* Intention on the part of the party paying the consideration that the party taking title should take the beneficial interest may be shown not only by express declarations but by the circumstances of the transaction.

9. SAME—*when declarations of payor that farm was his are not admissible.* In a suit against the holder of the legal title to establish a resulting trust in the heirs of the party who paid the consideration, declarations of the payor to the effect that the land was his are self-serving, and are not admissible in his favor, or in favor of those in privity with him, unless made at the time of the purchase, so as to form a part of the *res gestæ.*

10. SAME—*burden is upon party seeking to establish a trust.* The burden of proof is upon the party seeking to establish a resulting trust, and the evidence must be clear, unequivocal and unmistakable and establish the fact of payment by the alleged beneficiary beyond a reasonable doubt.

APPEAL from the Circuit Court of Lake county; the Hon. CHARLES WHITNEY, Judge, presiding.

ORVIS & BEAUBIEN, and CHARLES H. KING, (BENJAMIN PARMALEE, of counsel,) for appellant.

COOKE, POPE & POPE, and PAUL MACGUFFIN, for appellees.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Lake county finding that the title to 120 acres of land in that county, standing in the name of appellant, had been purchased with the money of William F. Lord by reason of the undue influence of appellant, and directing the conveyance of said real estate by Genevieve Reed to appellees, and in default thereof that the master in chancery make the conveyance.

From the record it appears that William F. Lord died intestate September 12, 1906, a resident of Cook county, Illinois; that he had been married to appellee Emma E. Lord about twenty-four years, and their children living at the time of his death were two daughters, Idamae, aged twenty-two, and Belle, aged eighteen, and two sons, Fred and Earl, aged, respectively, thirteen and eight; that he had been engaged most of his life in the railroad business and at the time of his death was general freight agent of the Wisconsin Central Railroad Company; that while the Lord family resided in St. Paul they became acquainted with appellant, Genevieve Reed, who was working there as a clerk; that soon after the removal of the family to Chicago, in 1901, Miss Reed came to visit them and lived at their home until January, 1903; that shortly before that date Mrs. Lord asked her to find another place, stating that she (Miss Reed) and Lord were becoming altogether too

good friends; that he was meeting her at restaurants and places of amusement; that Miss Reed then went to the home of her parents, at Macedon, New York, for the Christmas vacation, and upon her return, after stopping two or three days at the Lord home, found a new boarding place about six blocks distant; that she took a course in shorthand in Chicago and worked as a stenographer. The evidence shows that Lord and Miss Reed, from the time she came to Chicago, were frequently together, and that he visited her at her rooms after she left the Lord home, in 1903. Miss Reed testified that in the last named year Lord told her that he had not been very happy in his marriage, and as soon as he could get a divorce he would marry her (Miss Reed) and she promised she would marry him; that he told her several times he was going to file divorce proceedings, but she advised him to wait until his girls were older, and one of them, who was engaged, should be married. In the summer of 1905 Lord interviewed a real estate dealer at Antioch, Illinois, telling him he had a sister-in-law who had quite a lot of money which she wished to invest in real estate, and asked the agent about the purchase of a farm in Lake county. Later, Lord and Miss Reed visited the farm before the purchase. Miss Reed testified that from 1903 to 1905 she deposited in two banks in Chicago $3100 in various sums which had been given her by Lord; that along with these sums she deposited some of her own earnings; that in July, 1905, she drew out of these banks $2500 in currency, and that Lord met her at a bank in Chicago and gave her $5000 more in currency; that she put the $7500 in her hand bag and took it to her office and a few hours later handed it to Lord, and that with this money the land in question was purchased. The evidence is not controverted that Lord, in the latter part of July, at the time the deed in question was executed to Miss Reed, paid the purchase price for the land in Waukegan, taking the $7500 in currency from his pocket and handing it to the grantor's

agent, and that Miss Reed was not present at the transaction. Lord attended to practically all of the details of renting the farm from its purchase until his death and furnished and paid the money to stock it, usually stating that he was acting for Miss Reed in these transactions. The latter accompanied Lord two or three times on trips to the farm after the purchase. Lord told some of his relatives, after this farm was deeded to Miss Reed, that he (Lord) had a farm in Lake county. The evidence is also uncontroverted that Lord visited Miss Reed several times at her parents' home, in Macedon, New York, where she introduced him as W. F. Adams, her affianced husband. During the time he was acquainted with Miss Reed, Lord's salary averaged about $200 a month, and he was allowed an expense account of $133.33 per month, and also all his transportation on various roads. The evidence shows that Miss Reed's father's property consisted of a small farm near Macedon, New York, of about forty-seven acres, which was mortgaged at the time Lord became acquainted with Miss Reed. Miss Reed testified that Lord gave her $636, which she used in paying off this mortgage. Her salary during the time she knew Lord ranged from $32 to $85 per month. Mrs. Lord testified she did not know that Lord was dissatisfied with his home life; that he was home practically every evening the last few years, when in the city; that when he last left home, in September, 1906, he told her he was going to Cincinnati on business; that he kissed them all that morning and bade them good by, and the next she heard about him was a telegram from Miss Reed from Macedon a few days later, saying: "Will is very sick here; dangerously ill; come at once." Mrs. Lord took the afternoon train, reaching Macedon the following day, and found that her husband had passed away during the night. There is evidence in the record tending to show that Miss Reed's parents did not know Lord's real name, or that he was a married man, until the day he died at their home. He

had been visiting Miss Reed for about two days before his death. The only property that he left, outside of his alleged interest in the land in question, was $2800.83 deposited in a bank in Chicago and two insurance policies of $2000 each, payable to his wife.

Appellees contend that on the facts shown in this record it must be held that Miss Reed exercised such undue influence over William F. Lord as to deprive him of his own volition and free agency at the time he purchased the farm and had the deed made to Genevieve Reed; that the circumstantial evidence in this record shows that illicit relations existed between Miss Reed and Lord, and that when such relation is shown to exist, such a presumption of fact arises as will sustain the judgment of the trial court based upon undue influence. The trial court found that Genevieve Reed was a woman of unusual physical charms, and by reason of her arts, artifices and blandishments exercised great power over Lord. We find no evidence in the record, other than that as to his fondness for her and his promise to marry her when he obtained a divorce, that would indicate that she exercised any undue influence over him. Direct proof of undue influence is not indispensable. It may, and often must, be proved by circumstantial evidence. At the time of his death Lord was about forty-three years of age and Miss Reed about thirty-one. He was held in high esteem by the corporation employing him and was always considered a successful railroad man. He said at different times, to friends, that Miss Reed was an expensive luxury to him. A letter was also introduced in evidence, written by her to him a few weeks before his death, in which she asked for money, stating she did not want him to think she was "trying to bleed him." There is no positive or direct evidence in the record that Lord and Miss Reed had illicit relations. The most that can be said from the evidence is that he had promised to marry her when he obtained a divorce; that they were together frequently and that he was

furnishing her money. These were circumstances tending more or less strongly to prove that their relations were illicit. Conceding that such were their relations, it does not follow, from that fact alone, that she exercised such undue influence over him as to require the setting aside of this deed. In *Smith* v. *Henline,* 174 Ill. 184, this court said (p. 196) : "The existence of an illicit relation between a deceased testator and his mistress will not give rise to a presumption of undue influence as a matter of law; but undue influence is more readily inferred in case of a will made in favor of a mistress than in the case of a will in favor of a wife. The existence of the relation is a circumstance to be considered by the jury, along with other facts in the case." In *Snell* v. *Weldon,* 239 Ill. 279, the above rule was quoted with approval, and it was said that improper relations between a man and woman would be no reason for setting aside a will, and would not, of themselves, establish undue influence. A doctrine apparently not in harmony with that of this court has been laid down in some other jurisdictions. (See *Hanna* v. *Wilcox,* 53 Iowa, 547; *Shipman* v. *Furniss,* 69 Ala. 555; *Muller* v. *Buyck,* 12 Mont. 354.) The facts in each of those cases, however, tended strongly to show the dominating influence of the donee over the donor as to the property in question. The great weight of authority in other jurisdictions is in accord with the ruling in this State that undue influence in such cases will not be presumed as a matter of law, but when such meretricious relation is shown it will call for and justify a close and suspicious scrutiny of the acts of the parties as to whether the gift in question resulted from the free choice of the donor. (*Platt* v. *Elias,* 9 Am. & Eng. Ann. Cas. 780, and note; *Schwalber* v. *Ehman,* 62 N. J. Eq. 314; *Schuchardt* v. *Schuchardt,* 62 id. 710; *In re Johnson's Estate,* 159 Pa. St. 630; *McClure* v. *McClure,* 86 Tenn. 173; *Waters* v. *Reed,* 129 Mich. 131.) Such an immoral relation, however reprehensible and opposed to the best interests of

society, can carry no presumption of law that undue influence has been exercised in making a will or deed. The burden of proof of undue influence is upon those who assert it. It must be made to appear, either expressly or by fair inference from circumstances proved, that such influence was so exercised as to dominate and control the will of the testator or grantor and cause him to make a disposition of his property which he otherwise would not have made. (*Francis* v. *Wilkinson,* 147 Ill. 370; *Rutherford* v. *Morris,* 77 id. 397; *Sears* v. *Vaughan,* 230 id. 572.) The evidence in the record shows conclusively that William F. Lord was a successful railroad man in the prime of life,—a strong, forceful character. There is not the slightest evidence, except his intimacy with Genevieve Reed, (whether the testimony shows it to be merely friendly with the promise of future marriage or whether it be held to be illicit,) to indicate that his will was dominated or controlled by hers in the purchase of the farm in question and the placing of the title in her name. On the contrary, the evidence indicates that he was the dominating factor in the negotiations for and purchase of the farm and in the management thereafter until his death. Where a person is of sound mind and memory, the fact that his conduct and sentiments are contrary to good morals is no sufficient ground, in itself, for holding that his will or deed should be set aside. (*Wickes* v. *Walden,* 228 Ill. 56; *Snell* v. *Weldon, supra.*) The circuit court erred in setting aside the deed in question because of undue influence exercised by appellant, Genevieve Reed, over William F. Lord.

It is further insisted by appellees that under the facts connected with the purchase of this land Genevieve Reed holds the title under a resulting trust in favor of the heirs of William F. Lord, deceased. This court has frequently stated that where the purchase money of land is paid by one person and the title thereby purchased is conveyed to another person, the law construes such facts as constitut-

ing a resulting trust. This trust arises, not from a contract or agreement of the parties, but from their acts. Such trusts may be established by parol evidence. (*Brennaman* v. *Schell*, 212 Ill. 356, and cases cited.) The resulting trust arises, if at all, the instant the legal estate is taken and the legal title vests. No payment made will create a resulting trust, unless at the moment the title passes the trust results from the transaction itself. (*Strong* v. *Messinger*, 148 Ill. 431; *Reed* v. *Reed*, 135 id. 482.) The payment of the consideration merely raises a *prima facie* presumption in favor of the resulting trust. It may be shown by parol evidence, to rebut this presumption, that it was the intention of the parties that the grantee should take the beneficial interest. (15 Am. & Eng. Ency. of Law,—2d ed.—1136, 1176; 1 Perry on Trusts,—5th ed.—sec. 139; Lewin on Trusts,—11th ed.—185; 3 Pomeroy's Eq. Jur. sec. 1040, and cases cited; *Pickler* v. *Pickler*, 180 Ill. 168; *Goelz* v. *Goelz*, 157 id. 33.) The intention on the part of the payor that the grantee should take the beneficial interest may be proved not only by express declarations, but by the circumstances surrounding the transaction. (15 Am. & Eng. Ency. of Law,—2d ed.—1137, and cases there cited.) It has been held that the evidence to rebut need not be as strong as the evidence to create a resulting trust. (Lewin on Trusts,—11th ed.—185, and cases cited.) From the evidence in this record it is uncontroverted that $2500 of the purchase price of the land here in question was given by Lord to Miss Reed at various periods, varying from several months to years, before the purchase of this land. Under the authorities no resulting trust would arise, by implication of law, as to this portion of the purchase money. Miss Reed also testified that the balance of the purchase price, $5000, was a gift to her from Lord the day the land was purchased. There is no direct evidence in the record contradicting this. Her testimony on this question is in

harmony with the uncontroverted testimony as to Lord's relations with her and his negotiations for the purchase and control of this farm. Appellees called Miss Reed as their witness. All of her testimony, whether favorable or unfavorable to the appellees, must receive equal consideration from the court. (*Sawyer* v. *Moyer,* 109 Ill. 461.) The declarations of Lord, testified to by various persons, that the farm belonged to him, were self-serving. They might be used against him, but not in his favor or that of his privies unless made at the time of the purchase, so as to form a part of the *res gestæ.* (*Corder* v. *Corder,* 124 Ill. 229; 15 Am. & Eng. Ency. of Law,—2d ed.—1173, and cases cited.) The burden of proof is upon the person seeking to establish the trust, and the evidence must be clear, strong, unequivocal and unmistakable, and establish the fact of the payment by the alleged beneficiary beyond a doubt. 1 Pomeroy's Eq. Jur.—3d ed.—sec. 1040; *VanBuskirk* v. *VanBuskirk,* 148 Ill. 9; *Jacksonville Nat. Bank* v. *Beesley,* 159 id. 120; *Wells* v. *Messenger,* 249 id. 72.

It is contended by the appellees that the circumstances shown on this record indicate that Lord bought this property and put it in the name of Miss Reed intending thereafter to obtain a divorce from his wife and marry Miss Reed and thus defeat Mrs. Lord's dower interest. No witnesses testified to any declaration made by either Lord or Miss Reed that would justify any such inference.

We are compelled to hold that the evidence in this record does not establish a resulting trust in favor of appellees.

The decree of the circuit court must be reversed and the cause remanded for further proceedings in harmony with the rules of law herein stated. *Reversed and remanded.*