SHERMAN DODGE, Appellee, *vs.* ROBERT L. THOMAS *et al.*
Appellants.

*Opinion filed December 16, 1914.*

1. TRUSTS—*putting title in name of wife raises presumption of
a gift or advancement.* Where a husband, upon purchasing land,
directs the title to be conveyed to his wife, the presumption of a re-
sulting trust which would obtain in case the parties were strangers
does not arise, but it will be presumed, until the contrary is shown,
that the conveyance was intended as a gift or advancement.

2. SAME—*declarations of real purchaser at or before the trans-
action are competent.* The declarations of the real purchaser, at
or before the time of the purchase, are admissible upon the ques-
tion whether he intended the conveyance of the legal title to his
wife to be a gift or advancement, or in trust.

3. SAME—*after-declarations of real purchaser cannot control
prior transactions.* Declarations made by the real purchaser after
the purchase are incompetent to control the effect of prior trans-
actions, although they may be used by the nominal grantee against
a purchaser to show that the transaction was intended as a settle-
ment and not a trust.

4. SAME—*when after-declarations of nominal grantee are ad-
missible.* In a proceeding to establish a resulting trust in the com-
plainant in lands to which his wife held the legal title, statements
by the wife that she owned the property and that her husband was
acting as her agent are admissible against him if they were made
in his presence and assented to by him at the time.

5. SAME—*declarations of nominal grantee must be direct and
certain.* Declarations of the nominal grantee, relied upon to es-
tablish a resulting trust, must be direct and certain and be cor-
roborated by other facts and circumstances, as the courts will not
act upon mere declarations which are conflicting, vague or incon-
sistent with themselves.

6. SAME—*burden of establishing a resulting trust is upon him
who asserts it.* One who asserts a resulting trust in his favor has
the burden, on the whole case, of establishing the trust by evi-
dence which is clear and unmistakable, and must establish the fact
of his payment of the purchase money beyond a reasonable doubt.

7. SAME—*when a resulting trust will not be held to be suffi-
ciently established.* Where the evidence is doubtful or is capable
of reasonable explanation upon any theory other than of the ex-
istence of a resulting trust, such trust will not be held to be suffi-
ciently established.

8. SAME—*what fact is not conclusive of the existence of a resulting trust.* The mere fact that the result of indulging the presumption that the conveyance of the legal title to property to the wife was intended as a gift may be to strip the husband of all his property and leave him penniless at an advanced ·age is not conclusive upon the question whether the conveyance was intended as a gift or to create a resulting trust.

9. SAME—*when real purchaser cannot claim a resulting trust.* If it was the intention, at the time of the conveyance, to confer the beneficial title to the nominal grantee, the person who paid the purchase money cannot put a different construction upon the transaction at a subsequent time and claim a resulting trust.

10. SAME—*what testimony by the real purchaser is inconsistent with the claim of a resulting trust.* Testimony by the husband that at the time of purchasing land he had the title placed in his wife's name in order that she might protect herself and her children against any claim of a son of the husband by a former marriage in case the husband should die before the wife, is inconsistent with his subsequent claim of a resulting trust.

FARMER, J., dissenting.

APPEAL from the Circuit Court of Marion county; the Hon. THOMAS M. JETT, Judge, presiding.

KAGY & VANDERVORT, for appellants.

C. F. PATTERSON, CHARLES H. HOLT, and W. G. WILSON, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill in equity brought by appellee, Sherman Dodge, in the circuit court of Marion county, to have a resulting trust declared in his favor as to certain property in the village of Sandoval, in said county. The bill made all parties interested defendants, among others Robert L. Thomas and Lease Ruddick, appellants herein, and appellee's four children by his deceased wife, Mary J. Dodge. The first two named defendants answered, and thereafter filed a cross-bill claiming interest in a part of said property. Appellee and his three daughters answered, denying

the allegations of the cross-bill. After the pleadings were settled, evidence taken and a hearing had before the chancellor, a decree was entered dismissing the cross-bill of Thomas and Ruddick, finding that a resulting trust existed in said property in favor of appellee and that he was the owner in fee simple of all the real estate described in said bill, and further finding that a deed made by the appellee's son, Irwin G. Dodge, and wife, to Robert L. Thomas, and one made by his daughter Edna M. Clark and husband to Lease Ruddick, be set aside and declared null and void and of no effect. The decree directed that the four children of appellee, and the respective husband or wife of each, and Lease Ruddick and Robert L. Thomas, execute a deed to appellee for said property, and upon their failure so to do that the master in chancery execute such deed. This appeal is from that decree.

Appellee is a dentist, and while living in Assumption, Christian county, Illinois, in 1887 purchased of one Shafer three vacant lots for $150. Appellee made the first payment on the lots by making for Shafer's wife a set of teeth for $40 and paid the balance by giving orders to Shafer on persons for whom dental work had been done. The deed for two of these lots was taken in the name of appellee's wife, Mary J. Dodge, and the third lot was deeded to Joseph Foster, Mrs. Dodge's father, to secure Foster for some money loaned to appellee and his wife. This lot was thereafter conveyed by Foster to appellee and by him to his wife, Mary J. Dodge. Shortly after the purchase of these lots appellee built a house thereon and occupied the same as a home until the spring of 1903. The record does not disclose from what sources the money was obtained to pay for this house and other improvements upon these lots. It does, however, show that the property was mortgaged at various times to secure several loans of $500 or less. The lot originally deeded to Foster was also mortgaged for various amounts after the title was placed in the name of

appellee's wife, and in 1908 there was a foreclosure suit brought to foreclose a mortgage thereon. In December, 1902, these three lots were sold to one John Johnson for $1950. Of this purchase price $1569 was given in a certificate of deposit drawn in favor of Mary J. Dodge. The balance of the $1950 was apparently paid in cash. At about that time Sherman Dodge went to Sandoval, in Marion county, to look at the hotel property involved in this proceeding, then owned by Mary J. Hathaway. Appellee's wife came and examined the property but had no talk with Mrs. Hathaway with reference to the purchase. The deal was closed between appellee and Mrs. Hathaway for $2000, the deed being taken in the name of Mary J. Dodge, the purchaser assuming a mortgage of $1200, paying $600 in cash and giving a note signed by herself and her husband for the balance of $200. At about the same time appellee purchased two other pieces of property in Sandoval for $800 and $355, respectively, both in the name of the wife. The first named property was used thereafter for a home by appellee and his family and is called in this record the homestead, and the other property, also improved, is called in this record the "rent house." While the record is not entirely clear on this point, we judge that cash was paid for the two smaller pieces of property and $600 in cash on the hotel property. The note for $200 and the mortgage for $1200 on said hotel property had been paid off at the time of this hearing.

Mary J. Dodge died on July 30, 1912, leaving surviving appellee and four children,—three daughters and a son, all adults. At the time of her death she was seized in fee simple of the title to the three separate tracts of land in Sandoval. The appellants, Thomas and Ruddick, are raising the question as to the correctness of the decree only as to the hotel property, claiming no interest in the other two tracts. The only question as to the hotel property is whether the appellee's wife, Mary J. Dodge, at the time of

her death owned the equitable as well as the legal title, or whether she held the title in trust for appellee, her husband.

We find no positive evidence as to the sources from which the money was obtained to pay for the property in Assumption, except as to the first $150 for the vacant lots. It is a fair inference that the money borrowed at that time from Foster, the father of appellee's wife, was used to help build the home, but how this loan was re-paid or where the money came from for the improvement of or to pay the mortgages on the property is not definitely shown. Certain witnesses testified that appellee during those years had a lucrative professional practice, but just what his income was or for what purpose he used it does not appear. The wife was in good health and apparently attended to all the housework for the family while they lived in Assumption. The conclusion is reasonable that of the $1950 received for the Assumption property $1755 was used to purchase two of the tracts in Sandoval and to pay $600 on the third tract,—the hotel property. Where the money came from to pay the $200 note or the $1200 mortgage that was assumed on the hotel property the evidence does not disclose. The evidence tends to show, however, that the $200 note was paid by appellee's wife partly or wholly from the income of the hotel. Mrs. Dodge does not seem to have had any independent income during the years they lived in Assumption. Shortly after they moved to Sandoval she began receiving money as an heir from her father's estate. In 1903 she received $1500 in her own right and a few months later something over $1200, and in December, 1910, she received as a part of her father's estate $2000, which she kept deposited until shortly prior to her death, in a bank at Tower Hill, Illinois, of which her brother was cashier. The evidence is to the effect that this $2000 was distributed to her four children by her in the early part of 1912. She loaned the first two payments she received from her father's estate, but what she finally did with them we are unable to

decide. The testimony of two of her daughters in behalf of appellee tended to show that she distributed that money among her four children in 1912, the same as she did the last payment, $2000. Their evidence, however, as to the distribution of the first two payments we deem not at all consistent with itself or with the rest of the record and therefore unsatisfactory on that point.

At the time the three Assumption lots were purchased appellee told the grantor, Shafer, that he wanted his wife's name, Mary J. Dodge, inserted in the deed as grantee. Mrs. Dodge was present at the time and stated that this was done because they wanted to protect her and her children in her homestead rights and to prevent a son of appellee by a former marriage from having an interest in the property should appellee die before the wife. There was testimony offered by one or two other witnesses for appellee that the wife had stated the same thing to them as to why the title was put in her name, and there was testimony, also, that she had made the same statement after the hotel property was purchased in Sandoval in her name. The testimony of certain other witnesses was to the effect that the wife had said that the Assumption property, as well as that in Sandoval, after it was purchased, was not hers but belonged to her husband. On the other hand there is testimony by several of the Sandoval business men that the wife said to them, in her husband's presence, that the hotel property belonged to her. The evidence shows, without controversy, that shortly after the hotel property was purchased and the deed taken in Mrs. Dodge's name she leased it and thereafter collected the rent and paid the taxes. Mundy, the lessee, and his wife, testified to that effect, and that Dodge said several times to him, when asked to repair the property, that it belonged to his wife. In 1910 Joseph Thomas (no relation of the appellant Thomas) and J. F. Knight desired to secure a lease on this hotel property. They saw appellee, who told them the property be-

longed to his wife and went with them to see her. After some negotiations they apparently agreed as to the terms and the lease was drawn up and brought back the next day, and, although the husband desired to do so, she refused to execute it, and stated that her husband had nothing to do with it,—that he was only her agent. The husband does not deny this, although he denies the testimony of certain witnesses that he said in their presence, in Sandoval, that the property belonged to his wife. The daughters testified that shortly before the mother's death, when she knew she could not live, she stated to them that she did not worry about them as they were all married and their husbands could take care of them but that she was worrying about her husband, and if they made any trouble about the property she would rise from the grave and haunt them. They also testified that their mother stated at other times that the property belonged to the father and had been purchased with his money. After Mrs. Dodge's death, in 1912, appellee took possession of the hotel property, and he claims that he made many improvements on it, amounting to several thousand dollars. There is evidence tending to show that he personally paid for the repairs he made on the hotel property before and after his wife's death, but the evidence does not disclose from what source he obtained the money that was used for this purpose before or after the wife's death.

Appellant Robert L. Thomas purchased, some months after Mrs. Dodge's death, whatever interest the son, Irwin G. Dodge, had in the hotel property, giving him therefor $200 in cash and a note for $400, the note containing the condition that it should not be paid if the son had no interest in the property. Irwin G. Dodge was living in Texas at the time of the trial and did not testify. Thomas testifies that before he made this purchase he talked with appellee about the question, and that the latter said that he would be glad to have somebody living in Sandoval buy the

boy's interest. Appellee admits that he had a conversation with Thomas but denies that he admitted that the son had any interest in the hotel. Appellant Lease Ruddick purchased whatever interest one of the daughters had in the hotel property for a consideration of $660, receiving from her and her husband a deed therefor. It seems that there was some discussion at that time between Ruddick and the daughter as to the father's interest, the daughter claiming that she told Ruddick that the father claimed the title, and he said if he thought that, he would not pay anything for her share. Appellee was married for the third time in September, 1913, and was living at the time of the trial with his wife in what is called the homestead property, in Sandoval, and looking after the other two properties. He was at that time seventy-three years of age and was not in the active practice of his profession.

It is argued by appellants' counsel that even if the income from the husband's professional business went to pay for the home and other improvements, the wife should be credited as much as the husband with assisting in earning the income. On a question of this kind, in view of the facts herein stated, that argument is not without merit. A resulting trust is one which arises where the legal estate in property is disposed of, conveyed or transferred, but the intent appears, or is inferred from the terms of the disposition or from the accompanying facts and circumstances, that the beneficial interest is not to go or be enjoyed with the legal title. (3 Pomeroy's Eq. Jur.—3d ed.—sec. 1031.) A resulting trust arises, if at all, the instant the legal estate is taken and the legal title vests. No payment made will create a resulting trust unless at the moment the title passes the trust results from the transaction itself. The payment of the consideration merely raises a *prima facie* presumption in favor of the resulting trust. (*Lord* v. *Reed,* 254 Ill. 350, and cases cited.) In this State the law has long been settled that where the property has been pur-

chased and paid for and the title taken in the name of another person, as between parties who are strangers to each other the law will presume from those facts that the grantee holds the title to the property in trust for the person furnishing the purchase price. If, however, title is taken in the name of a wife or child of one furnishing the purchase money such presumption does not arise but it will be presumed that the conveyance was made as a gift or advancement. This presumption is not conclusive but may be rebutted by circumstances which may be established by parol proof. (*Bachseits* v. *Leichtwcis,* 256 Ill. 357, and cases cited.) Whether a purchase in the name of the wife is an advancement or not is a question of pure intention, though presumed, in the first instance, to be a provision and settlement. (*Maxwell* v. *Maxwell,* 109 Ill. 588.) Declarations of the real purchaser, either before or at the time of the purchase, may be received to show whether he intended it as an advancement or a trust. As evidence of what the intention was at the time, such declarations are held to be parts of the transaction or words accompanying an act. The real purchaser, if otherwise competent, may state as a witness what his objects, intentions and purposes were in making the purchase and in taking the title in the name of another person. Declarations made by the actual purchaser after the purchase are incompetent to control the effect of prior transactions, but such declarations may be used by the grantee against a purchaser to show that it was a settlement and not a trust. The after-declarations of the nominal grantee can only be used against him and not in his favor. (1 Perry on Trusts,—6th ed.—sec. 147.) The statements, therefore, of the wife, Mary J. Dodge, to Thomas and Knight as to owning the hotel property and her husband's acting as agent would not be admissible except for the fact that they were made in the presence of appellee himself and assented to by him at that time.

When the husband or father has placed all of his property in the name of his wife and his income and earnings are large and the investments of unusual character, and where the indulging in the presumption that the placing of the title to the property in the wife or child as a gift would have the effect of stripping the husband or father of all his property and leaving him penniless at an advanced age, then such facts would strongly tend to rebut such presumption. (*Skahen* v. *Irving,* 206 Ill. 597.) That one fact alone, however, is not conclusive as to whether it is an advancement or resulting trust. It is only a fact which may tend more or less strongly towards establishing a resulting trust in the father, depending upon the facts and circumstances shown on the trial. It has been stated that the principle of law that the purchase by the husband or father in the name of wife or children is presumed *prima facie* to be an advancement will not be frittered away by mere refinement. The burden of proof on the whole case is on the one who seeks to establish a resulting trust, to show by clear evidence the necessary facts. (1 Perry on Trusts,—6th ed.—secs. 139, 146.) It has also been frequently stated that the possession and improvement of the property in question, as well as the payment of taxes, by the husband or father is not conclusive as to his being the beneficial owner; that there is nothing in those facts inconsistent with the theory that the land was conveyed as an advancement to the wife. The possession and improvement by the complainant, as well as the payment of taxes, may with 'the same propriety be presumed to have been under his life estate in the land as under a claim of title in fee." (*Fry* v. *Morrison,* 159 Ill. 244.) While it is true that these facts, taken in connection with the admission of the wife that she held the property in trust for the benefit of the husband, may be sufficient to rebut the presumption of advancement, (*Dorman* v. *Dorman,* 187 Ill. 154,) the wife's statements here on that question, as shown by the

testimony of the various witnesses, are not at all consistent. Furthermore, she not only had the title but the absolute control and direction of the hotel property from the time it was purchased until her death, leasing it and paying the taxes thereon. The testimony that she claimed to own the property is far more clear and satisfactory on that point than testimony (such as that of the daughters) that she said during her last sickness that appellee owned the property. The declarations of the nominal grantee must be direct and certain, and to be controlling should be corroborated by other facts and circumstances, for courts will not act upon mere declarations if they are conflicting, vague or inconsistent with themselves. (1 Perry on Trusts,— 6th ed.—sec. 147.) It is settled by complete unanimity of decisions that parol evidence to establish a resulting trust must be clear, strong, unequivocal and unmistakable, and must establish the fact of the payment of the purchase money by the alleged beneficiary beyond doubt. (3 Pomeroy's Eq. Jur.—3d ed.—sec. 1040; *VanBuskirk* v. *VanBuskirk,* 148 Ill. 9; *Jacksonville Nat. Bank* v. *Beesley,* 159 id. 120; *Wells* v. *Messenger,* 249 id. 72.) Where the evidence is doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon any theory other than that of the existence of an implied or resulting trust, such trust will not be held sufficiently established to entitle the beneficiary to a decree declaring and enforcing it. (*Stephens* v. *St. Louis Union Trust Co.* 260 Ill. 364, and cases cited.) The evidence to rebut the presumption of a resulting trust is not required to be as strong as that required to show the payment of the purchase money. (15 Am. & Eng. Ency. of Law, (2d ed.) 1176, and cases cited; Lewin on Trusts, (9th ed.) sec. 178; *Lord* v. *Reed, supra.*)

From the statement of facts already set out, manifestly the evidence is not of such clear, strong, satisfactory character as to uphold a decree finding that the hotel property was taken in the name of the grantee with the intention of

the beneficial interest being held for appellee. This conclusion is greatly strengthened by the proof introduced in behalf of appellee that the title to the Assumption property and the Sandoval hotel property was placed in the name of appellee's wife in order to prevent a son by a former marriage from acquiring any interest therein. There is no evidence in the record that anything was said at the time the lots in Assumption were deeded to appellee's wife, or at the time the hotel property was taken in her name in Sandoval, to the effect that she agreed to hold the property in trust for her husband. Does not this evidence prove conclusively that the property was conveyed to her for her benefit? The question, under such circumstances, as to whether it is a gift or advancement or held in trust is purely one of intention. If it was the intention at that time to confer a beneficial interest upon the grantee, the person who paid the purchase money cannot put a different construction upon the transaction at a subsequent time and claim a resulting trust. (1 Perry on Trusts,—6th ed.— sec. 140.) The intention that the grantee is to take a beneficial interest may be proved not only by express declarations but by the circumstances surrounding the transaction. (*Lord* v. *Reed, supra.*) No general rule can be stated that will determine when a conveyance will carry with it a beneficial interest and when it will be construed to create a trust, but the intention must be gathered from the facts and circumstances as shown by the record in each case. In *Standing* v. *Bowring,* 31 L. R. Ch. Div. 282, a widow in the year 1880 caused £6000 consols to be transferred in the joint name of herself and her god-son. She did so with the express intention that the god-son, in the event of his surviving her, should have the consols but that she should have the sole benefit of the dividends during her life. The court held that she could not claim a re-transfer on equitable grounds, the evidence clearly showing that she did not, when she made the transfer, intend to make the god-

son a trustee for her except as to the dividends. (Underhill on Trusts,—1st Am. ed.—164, note 5.) Manifestly, it was the intention of appellee in this case, judged by the testimony introduced by him on this point, that the wife should take the beneficial interest for herself and her children. If this be not true, then if he had died before his wife, his son by the former marriage could claim that the beneficial title was in appellee and demand a partition of the same and insist that his interests as an heir of his father be set off to him, thus defeating the very purpose and intention of placing the property in the wife's name.

This record shows, without contradiction, that the hotel property was placed in the wife's name in order to give her a beneficial interest so that she could protect herself and her children against any claim of the son by a former marriage. She managed and controlled this property in every way as if it were her own, until her death. Her statement to her daughters during her last sickness that if the children made the appellee any trouble about the property she would rise from the grave to haunt them is fully as consistent with her desire that he should have the use of it during his life as it is with the claim that she believed the beneficial title to all the property was in her husband. She was at that time dividing some of her personal property among her children. Why, it might be asked, if she wanted the husband to have the full title to this property, did she not at the same time make a deed conveying it to him? The children's actions after the death of the mother, especially the two who sold their interest in the hotel property, is fully as consistent with the theory that they understood that the mother not only had the legal but the beneficial title to the property and that the father only had his dower and homestead interests, as it is that appellee was entitled to and claimed the beneficial title to said property.

The evidence is conflicting as to whether the appellants, Thomas and Ruddick, were innocent purchasers as to the

interests in the hotel property. In view, however, of the conclusions we have reached that the decree incorrectly held that the wife, Mary J. Dodge, held the hotel property in trust for the appellee, we do not find it necessary to discuss the question of notice or estoppel, as argued in the briefs.

As to the hotel property the decree of the circuit court is reversed and the cause remanded to that court, with directions to dismiss the bill as to that property for want of equity.

*Reversed in part and remanded, with directions.*

Mr. JUSTICE FARMER, dissenting.