GEORGE B. DONLIN *et al.*

*v.*

LYDIA BRADLEY *et al.*

*Filed at Ottawa January 25, 1887.*

1. RESULTING TRUST—*whether it arises—of the nature and extent of interest which passes by a deed.* As a general rule of law, it is true that a deed in due form, executed by one *sui juris* for a tract of land, will pass whatever estate, title or interest the grantor has therein; and in the absence of anything to the contrary, it will be presumed that both the legal and equitable title to such interest or estate passes to the grantee.

2. But where the consideration paid for property belongs to one other than the grantee in the deed, or when the purchaser causes the conveyance to be made to a stranger, the use or beneficial enjoyment of the estate will, in the first case, result to the person to whom the consideration belonged, and, in the second, to the grantor, when nothing appears to show a contrary intention.

3. Where a father, having a life estate in a tract of land, the remainder being in his seven sons and daughters, with a view to borrow money on the same, conveyed his estate to his children, and procured a decree of partition and sale of the premises, and had the premises struck off and conveyed to one of his sons, who paid nothing on his purchase, but used the receipts of his brothers and sisters in payment of the price, the father paying the costs, it was *held*, that while the master's deed conveyed to such son the legal title, the law would raise, by implication, a resulting trust in favor of the other brothers and sisters whose receipts were used in making the payment, they being used the same as money. Their equitable interest in such case is in proportion to the sums paid by their receipts.

4. There can be no resulting trust where the use is expressly limited to the grantee in a deed. In such case there can be no trust in favor of the grantor. The ulterior object in making such deed can not be shown to override and counteract the express uses and purposes expressed in the deed.

5. SAME—*parol evidence to establish or defeat a claim of resulting trust.* A resulting trust being one which arises, by implication of law, out of external facts and circumstances, and not by the agreement of the parties, may be established or defeated by parol evidence, merely.

6. TRUST—STATUTE OF FRAUDS—*whether an express trust.* Where a conveyance is made to one person for the use and benefit of some one else, and the object and purposes of the conveyance are expressly declared by the grantor, this will constitute an express trust, which is void, under the Statute

of Frauds, if not manifested or evidenced in writing, as required by the statute. In such case there can be no implied trust.

7. RELEASE OF TRUST DEED—*by deed as to one trust deed—whether as to another.* Where a party has executed two deeds of trust to the same trustee, of different dates, to secure separate notes given to the same person, the administratrix of the deceased payee, together with the trustee, made a quitclaim deed of the premises to the debtor, in which it was recited that its object was to release the second deed of trust, it was *held*, that such deed did not release the first deed of trust, and that the same might nevertheless be foreclosed, in equity.

8. DEED—*of conditions repugnant to the grant.* All conditions, provisions and limitations in a deed for the conveyance of land, which are repugnant to the grant, are treated as inoperative and void.

APPEAL from the Circuit Court of Bureau county; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. WILSON & RAUM, for the appellants:

In the construction of a deed of conveyance, the question is not what estate did the grantor intend to convey, but what did he pass by apt and proper words. *Adam* v. *Ross,* 1 Vroom, 506; *Johnson* v. *Bantack,* 38 Ill. 118; *Rickman* v. *Carstairs,* 5 B. & O. 651.

*Videlicets, provisos, habenda,* etc., may explain doubtful clauses precedent, and may serve to separate and distribute generals into particulars, yet they can never be suffered to restrain or diminish what is expressly granted. If they can be construed to have no other meaning, they are void for repugnancy. *Cutler* v. *Tufts,* 3 Pick. 278; *Moore* v. *Griffin,* 22 Maine, 350; *During* v. *Long Wharf,* 25 id. 51; *Stukely* v. *Butler,* Hobart, 168; *Budd* v. *Brooks,* 3 Gill, 198; *Peyton* v. *Ayres,* 2 Md. Ch. 64.

All trusts, except resulting trusts, must be evidenced or created by writing. *Hovey* v. *Holcomb,* 11 Ill. 660.

Resulting trusts arise, first, when the estate is purchased in the name of one person, but the money paid for it is the property of another; second, when a conveyance is made in trust, declared only as to part, and the residue remains un-

disposed of, nothing being declared respecting it; and third, in cases of fraud. *Lloyd* v. *Spillett*, 2 Atk. 148; Browne on Statute of Frauds, sec. 84.

A resulting trust is never created by agreement, but always, by implication of law, from acts, independent of agreement of the parties. *Sheldon* v. *Harding*, 44 Ill. 68; *Williams* v. *Brown*, 14 id. 200; *McElderry* v. *Shipley*, 2 Mo. Ch. 25; *Jackman* v. *Ringland*, 4 Watts & S. 149.

A resulting trust is raised only from fraud in obtaining the title, or from paying the purchase money. *Barnet* v. *Dougherty*, 32 Pa. St. 371.

Such trust will not be raised in opposition to the declaration of the person who advances the money, nor in opposition to the agreement of the parties, on which the conveyance is founded, or to the obvious purpose and design of the transaction. *Botsford* v. *Burr*, 2 Johns. Ch. 405; *Steere* v. *Steere*, 5 id. 18; *Squire* v. *Harder*, 1 Paige, 494; *White* v. *Carpenter*, 2 id. 218; *Page* v. *Page*, 8 N. H. 187; *McGuire* v. *McGowen*, 4 Dessaus. 487; *Elliott* v. *Armstrong*, 2 Blackf. 199.

A resulting trust may, in all cases, be rebutted; and it is well settled, that it may be rebutted by parol evidence or circumstances. The rule is general, that an equity founded on parol may be rebutted, put down or discharged by parol proof. *Myers* v. *Myers*, 1 Casey, 100; *Livermore* v. *Aldrich*, 5 Cush. 431; Perry on Trusts, sec. 139.

The resulting trust must arise, if at all, at the time of the execution of the conveyance. *Rogers* v. *Murray*, 3 Paige, 390; Perry on Trusts, sec. 133.

Messrs. Hopkins & Hammond, for the appellees:

In all cases, by implication, and operation of law, a resulting trust arises in favor of the party whose money went into the purchase. *Enos* v. *Hunter*, 4 Gilm. 211; *Stevinson* v. *Thompson*, 13 Ill. 186; *Perry* v. *McHenry*, id. 227; *Reeve* v. *Strawn*, 14 id. 94; *Williams* v. *Brown*, id. 200; *Seaman* v.

*Cook,* id. 501; *Nichols* v. *Thornton,* 16 id. 113; *Franklin* v. *McEntire,* 23 id. 91; *Bruce* v. *Roney,* 18 id. 67; *Loomis* v. *Loomis,* 28 id. 454; *Sheldon* v. *Harding,* 44 id. 68; *Roberts* v. *Opp,* 56 id. 34; *Holmes* v. *Holmes,* 44 id. 168; *Cramer* v. *Hoose,* 93 id. 503.

Any property interest vesting in the land will create a resulting trust. *Dwinel* v. *Veagie,* 36 Maine, 509; *Buck* v. *Swarzig,* 35 id. 41; *Buck* v. *Pike,* 11 id. 9; *Brothers* v. *Porter,* 6 B. Mon. 106; *Pcyster* v. *Gould,* 2 Green's Ch. 474; *Kisler* v. *Kisler,* 2 Watts, 323; *Taliaferro* v. *Taliaferro,* 6 Ala. 404; *Lathrop* v. *Hoyt,* 7 Barb. 59; *Strimpfler* v. *Robert,* 18 Pa. 283; *Reeve* v. *Strawn,* 14 Ill. 94; Sugden on Vendors, (Am. notes,) 909-919; Browne on Frauds, secs. 87-90.

If the receipts of the heirs passed for and were accepted by the master as money, they represented the interest of the heirs in the proceeds of the sale, and in the lands before the sale, and it was their property, and a release of their rights, which paid for the land, the legal title of which was placed in James C. Donlin; and the law creates a resulting trust in favor of those who furnised the means to make the purchase. *Jenkins* v. *Eldridge,* 3 Story, 181; *Boyd* v. *McLane,* 1 Johns. Ch. 582; *Botsford* v. *Burr,* 2 id. 405; *Livingston* v. *Livingston,* id. 538; *Reeve* v. *Strawn,* 14 Ill. 94; *Enos* v. *Hunter,* 4 Gilm. 211; *Strimpfler* v. *Robert,* 18 Pa. 283; Sugden on Vendors, (Am. notes,) 909; Browne on Frauds, secs. 82-85, 90-93; Story's Eq. Jur. secs. 1201, 1206, 1210.

The intention of the parties to a deed must control. From the recital in the release deed, it is evident that only one of the trust deeds was released. There is no pretence that the debt secured by the first trust deed was ever paid, but, on the contrary, Bernard Donlin continued to pay the interest on it until his death. *Railroad Co.* v. *Koelle,* 104 Ill. 455; *Mortgage Co.* v. *Gross,* 93 id. 483; *Smiley* v. *Fries,* 104 id. 416; *Manufacturing Co.* v. *Wagon Co.* 91 id. 230; *Peckham* v. *Haddock,* 36 id. 38; *Board of Education* v. *Baptist Church,*

63 id. 204; *Hadden* v. *Shoutz,* 15 id. 581; *City of Alton* v. *Transportation Co.* 12 id. 38; *Swift* v. *Lee,* 65 id. 336.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 24th of March, 1866, James C. Donlin, since deceased, made his note to Tobias S. Bradley, for $2500, payable five years after date, with interest at the rate of ten per cent per annum, to secure which, he, at the same time, executed a trust deed to H. B. Hopkins, conveying the premises now in controversy. On the 17th of July, of the same year, Donlin made another trust deed upon the same premises, to Hopkins, to secure two other notes given by him to Bradley, amounting, in the aggregate, to $1500. Some time in June, 1867, Tobias S. Bradley died intestate, and his widow, Lydia Bradley, was appointed administratrix of his estate. On the 21st day of May, 1868, H. B. Hopkins and Lydia Bradley, for the expressed consideration of $1500, "remised, released, sold, conveyed and quitclaimed  \*  \*  \*   all right, title, interest, claim and demand" which they had to the premises in question, to the said James C. Donlin. Immediately after the description of the land in said deed, is inserted the following provision: "This deed is made for no other purpose except to release a certain trust deed made by James C. Donlin to H. B. Hopkins, dated the 17th day of July, A. D. 1866, recorded the 12th day of February, 1867, book 47, page 321." Then follows the *habendum* clause and conclusion in the usual form. The deed, with the exception of the clause just cited, relating to the object for which it was made, is in the ordinary form of a quitclaim deed, in every particular. James C. Donlin died intestate on the 15th day of May, 1880, leaving, as his only heirs, two minor children,—George B. and Charles E. Donlin.

On the 10th of August, 1883, the original bill in this case was filed by Lydia Bradley, as administratrix, and H. B.

Hopkins, as trustee, to foreclose the trust deed of the 24th of March, 1866, given to secure the Bradley note for $2500. To this bill, Edward Donlin, administrator of James C. Donlin, and the two infant sons of the latter, George B. and Charles E., were made defendants. Pending this bill, to-wit, on the 2d day of July, 1884, Tillie Donlin, the widow, and George B., a minor son of James C. Donlin, filed an original bill in the same court, against Charles E. Donlin, a son of James C. Donlin by a former wife, praying for the partition of the premises in question between the two children, and the assignment of the widow's dower therein. Mrs. Bradley, and Hopkins, together with one Baughton, a *terre* tenant, were also made parties to the bill. By subsequent amendments, John, Edward P., Ellen M. and Julia Donlin, Catherine Rochford and Josephine T. Moran, the surviving brothers and sisters of the said James C. Donlin, were made parties defendant to each of the above mentioned suits. They filed both an answer and cross-bill in the partition case, but made no defence to the foreclosure suit. By their cross-bill, they seek a partition of the premises between themselves and the two children of James C. Donlin, subject to the claim of Mrs. Bradley. The facts, as set forth in the answer and cross-bill, are, in substance, that their mother, Catherine Donlin, died seized in fee of the premises, in August, 1861, leaving her surviving, Bernard Donlin, her husband, themselves and the said James C., as her only heirs-at-law; that their father, in 1865, having a life estate in the land, as tenant by the curtesy, was desirous of obtaining a loan of $2500 on the property from Tobias S. Bradley; that to accomplish this object, it was thought best to get the fee simple title in one person, and for this purpose, their father, and their brother John, without consideration, quitclaimed and released their respective interests in the premises to the other children; that thereupon, a petition for partition of the premises was filed in the name of Ellen M. and Edward P. Donlin, as complainants,

against the remaining children having an interest in the prop-
erty; that the cause was prosecuted to a decree finding the
premises not susceptible of division, and ordering a sale of
the same; that in pursuance of the common understanding
between the parties, the premises were struck off to James C.
Donlin, who subsequently received a master's deed therefor;
that nothing was paid by him on his purchase, and that he,
afterwards, in consummation of his father's scheme, to effect
the loan, executed the Tobias note and trust deed for $2500.
The answer admits that the two children of James C. Donlin
are, as heirs of their father, owners, in fee, of one-seventh of
the premises, in their own right, and that their mother, Tillie
Donlin, is entitled to dower in that seventh interest.    But it
is insisted, the remaining six-sevenths of the land belongs, in
equity, to the respondents, and that the children of James
C. Donlin hold the legal title of the same interest for them.
To the cross-bill, Tillie Donlin filed an answer, denying the
equities thereof, and also setting up the Statute of Frauds as
to the alleged trust in the purchase of the property by James
C. Donlin at the partition sale, and also *laches* in the assertion
of their alleged rights.    George B. and Charles E. Donlin
answered, by their guardian *ad litem.*    On the 27th day of
March, 1885, the foreclosure and partition suits were, by con-
sent of the parties, consolidated.

The court, on the hearing, found the facts substantially as
alleged in the answer and cross-bill in the partition suit, and
ordered that the original bill in that suit be dismissed for
want of equity; found there was due complainant in the fore-
closure suit, on the note and deed of trust, $3575.92; directed
that the same be paid by the heirs of Catherine and James
C. Donlin within sixty days, and in default thereof, that the
master sell the premises in question, and apply the proceeds
of sale to the payment, first, of costs; second, costs taxable
against Lydia Bradley and H. B. Hopkins; third, amount
due Lydia Bradley; fourth, that the remainder of proceeds

be divided *per stirpes* between the heirs-at-law of Catherine Donlin; that out of the one-seventh to be allotted to the two children of James C. Donlin, the master is directed to pay one-half of the remaining costs, and report to the court the residue, as the basis of Tillie Donlin's dower, and to pay the balance of the costs out of the remaining six-sevenths of proceeds in his hands belonging to the children of Catherine Donlin, and to divide the residue equally between them. From this decree, Tillie Donlin, and the two children of James C. Donlin, have appealed to this court.

The position of appellants, shortly expressed, is, that by virtue of the master's deed to James C. Donlin, the latter became the owner of the property, subject, merely, to the trust of pledging it, by way of mortgage, to secure the contemplated loan from Bradley, and that this trust, being an express one, and the Statute of Frauds having been interposed as a defence, can not be established otherwise than by a writing of some kind, signed by Donlin,—that being an express trust, it also follows, as a necessary legal sequence, there can be no implied or resulting trust. Following up the deductions thus made, it is further urged that the legal effect of the quitclaim deed from Lydia Bradley and H. B. Hopkins, to James C. Donlin, for the premises in controversy, notwithstanding the positive declaration therein of a contrary purpose and intention, operated as an effectual release of the indebtedness secured by the first as well as the second deed of trust, thus leaving in James C. Donlin the title to the property, wholly unincumbered, and free from the claims of all persons whomsoever.

Without going into an examination of the numerous cases referred to by counsel, it may be admitted they, in the main, sustain the several propositions of law in support of which they were cited. But it does not therefore follow that the application which counsel makes of the propositions in question, or the authorities by which they are sustained, is a

proper one, or that they justify the conclusion drawn from them, in their application to this case. It is undoubtedly true, as a general rule of law, that a deed in due form, executed by one, *sui juris*, for a specifically described tract of land, will pass the title to whatever interest or estate the grantor has in the property, and in such case, in the absence of anything to the contrary, it will be presumed that both the legal and equitable title to such interest or estate passed to the grantee. But where, in such case, if the consideration paid for the property belonged to one other than the purchaser, or if the purchaser causes the conveyance to be made to a stranger, the use or beneficial enjoyment of the estate will, in the first case, result to the person to whom the consideration belonged, and in the second, to the grantor, where nothing appears to show a contrary intention. In these cases, the trust arises *ex lege*, and is founded upon the natural equity that he who pays for the property should enjoy it. (1 Perry on Trusts, sec. 124.) Trusts of this kind are a species of a larger class known as implied trusts, all of which arise out of extrinsic circumstances, and not from the agreement of the parties, and consequently may be established or defeated by verbal testimony, merely. On the other hand, where real estate is conveyed to a party for the benefit of some one other than the grantee, and the purposes and objects of the conveyance, and the uses to which the property is to be applied, are expressly declared by the grantor, such a transaction will constitute an express, as contradistinguished from an implied, trust, and if not manifested or evidenced by writing, it will be obnoxious to the Statute of Frauds. In these cases, there can be no implied trust, for the grantor, by expressly declaring the trusts upon which the conveyance is made, leaves nothing for implication.

It may also be admitted, as claimed by appellants, to be a well settled principle in the construction of conveyances, that all conditions, provisos and limitations which are repugnant

to the grant are to be regarded as inoperative and void. These general propositions are so elementary in their character that it is to be presumed they are understood alike by all who can justly lay any claim to a general knowledge of the rudiments of the law. But the question here is, whether the application which appellant seeks to make of them, in this case, is warranted by the facts before us.

Appellants' counsel, in his argument, assumes throughout that appellees are seeking to establish certain facts, the proof of which, other than by a writing of some kind, is prohibted by the Statute of Frauds. This assumption, which forms the basis of the entire argument, we think is not well founded. What are the facts? The supposed superior equity of appellants' claim is founded exclusively upon the master's deed to James C. Donlin, for it is not pretended that before that time his claim to the property was any better or more extensive than that of either of the other children of Catherine Donlin, from whom the land was inherited. Looking, then, at the master's sale and subsequent deed as the source of appellants' alleged superior equities, what do we find? The partition proceeding was commenced and conducted under the exclusive direction and control of Bernard Donlin, the father of all the parties to that suit, and the entire costs and expenses were paid by him. The property was struck off to James C. Donlin at the sale, though he was not present, and without his authority, and probably without his knowledge. No actual payment of anything was ever made by him to the master, on account of his purchase. The property was struck off to him at $3662.50. Assuming this to have been its true value, his one-seventh interest in it was $523.21$\frac{3}{7}$. The only consideration, therefore, moving from him personally, was his interest in the land, amounting to the sum stated. Receipts, however, were obtained from the other children for the amount of their respective interests in the proceeds of the sale, for which it is not pretended anything was paid, and were used as so much

cash in settling with the master. These receipts, representing appellees' interests in the land, or its proceeds, having been treated and used, in paying for the land, as so much cash, must, for the purposes of this suit, be now treated the same way. Viewing the transaction in this, its true, light, there could not be a better illustration of a resulting trust.

As opposing this view, it is urged, an express trust was declared, and, consequently, there could be no resulting trust. Conceding the premises to be true, this conclusion would certainly follow. But where is the evidence of such express trust? Where and by whom was it declared? Certainly not by the master who made the sale and deed for the premises. As to the appellees, they do not seem to have been so much as present at the sale, or at the making of the deed by the master. It is quite clear, from the evidence, no express trust, verbal or otherwise, was ever declared upon the master's conveyance to James C. Donlin, and hence there was nothing to prevent a trust resulting, as is claimed by appellees. The only difficulty we have encountered in the case relates to the claim or interest of John Donlin, who, it will be remembered, prior to the execution of the master's deed to James C. Donlin, conveyed, for a nominal consideration, all his title and interest in the premises to appellees and the said James C. Donlin. We think it clear, upon authority, no trust or beneficial interest could have resulted to him upon the making of that deed. On looking at it, we find the *habendum* clause to be as follows: "To have and to hold the same, (the premises,) together with all and singular the appurtenances and privileges thereunto belonging or in anywise thereunto appertaining, and all the estate, right, title and claim whatever of the said party of the first part, either in law or equity, to the only proper *use*, benefit and behoof of the said party of the second part, their heirs and assigns forever." It will be perceived, from this clause in the deed, the use or beneficial interest is expressly limited to the grantees therein mentioned, and to

their heirs and assigns, and it is a familiar doctrine of the law of trusts, that there can be no resulting trust where the use is expressly limited, as it is here, to the grantee. 1 Perry on Trusts, 162; 1 Lomax's Digest, 246; 2 Washburn on Real Prop. 476.

It is clear, upon these authorities, the claim of John Donlin can not be sustained, unless the ulterior object in making his deed is permitted to override and counteract the express provisions contained in it, which would hardly find support either in reason or authority. We think it quite clear, as claimed by appellants' counsel, that the deeds of John and his father to the other children, before the bringing of the partition proceeding, and its final culmination in a conveyance by the master to James C. Donlin, were but parts of the scheme devised by the father of the children to obtain the proposed loan of $2500 on the property. Concede all this to be so, still, when these deeds, and the record of the proceedings made and had for such ultimate purpose, are brought before a court as instruments of evidence, they must be construed and given effect according to their terms, if any effect is to be given to them at all. Where they are not assailed on the ground of fraud, accident or mistake, and they are properly before a court as a part of the proofs in a cause, and their meaning and import are plain and obvious, as was the case here, it is the duty of the court to give them effect accordingly.

It follows, from what we have said, the court below erred in finding that John Donlin had any interest in the premises. In all other respects we think the decree was right.

With respect to the quitclaim deed executed by Lydia Bradley and H. B. Hopkins to James C. Donlin, it is hardly necessary to observe that the rights of the children of Catherine Donlin could not have been, in any view, prejudiced by it, as neither of them, except James C., was a party to it. Nor do we think it stands in the way of a foreclosure of the trust deed. There is no pretence that the $2500 note was

ever paid, and the clause in the deed showing the object for which it was made, clearly negatives any intention of releasing that debt. Under these circumstances, equity will, notwithstanding the legal title to the property may have devolved upon James C. Donlin by virtue of the deed, keep the debt or claim alive, as a charge upon the land.

It is also urged that the trust set up in the cross-bill of appellees is an express trust, and not a resulting trust. Without stopping to inquire whether this is so or not, it is sufficient to say that the facts from which the law raises the resulting trust are fully and clearly stated in the cross-bill, and under the prayer contained in it, the relief awarded was fully warranted.

The decree of the court below is reversed, and the cause remanded, with directions to enter a decree in conformity with the views here expressed.

*Decree reversed.*

Mr. Justice Craig: I do not concur in that part of this opinion which disposes of the rights of John Donlin. The deed made by him to the other heirs, by which he is held to be concluded and deprived of all interest in the property, was executed as a part of the arangement under which the title to the property passed, by the master's deed, to James Donlin, in trust for all the heirs; and as the execution of that deed, and the deed of the master in chancery, are but parts of one transaction, the two instruments should, in my judgment, be construed together as one act or deed, and if this is done, the interest of John Donlin in the property will not be cut off, but it will stand on an equality with the other heirs, as equity requires that it should. In other respects I concur in the opinion.