[Civ. No. 2714.   First Appellate District, Division Two.—April 1, 1919.]

## J. C. MacFARLAND, Administrator, etc., Appellant, v. JESSE WALKER et al., Respondents.

[1] CONVEYANCES — LEGAL AND EQUITABLE INTERESTS — OPERATIVE WORDS.—Where a grantor conveys certain lands, reserving and excepting the subterranean oils and minerals and the right to enter upon the lands to dig, bore, or mine for the same, and takes a mortgage on the lands conveyed to secure the payment of a certain promissory note, the operative words "remise, release and forever quitclaim all my right, title and interest, both in law and equity," are the most apt which he can select to thereafter convey to his grantees both his equitable interest under the mortgage and his legal interest in the minerals and mining rights.

[2] ID.—GRANT—WHAT WORD INCLUDES.—The word "grant" includes all sorts of conveyances, including quitclaim deeds.

[3] ID.—CASE AT BAR—CONSTRUCTION OF INSTRUMENT.—In this action to quiet title to certain minerals and mining rights, the operative words "remise, release and forever quitclaim all my right, title and interest, both in law and equity," used by plaintiff's testator, under the surrounding circumstances on making the instrument in question, were given their full significance and not construed merely as a

release of mortgage, notwithstanding such instrument began with the recital "Whereas the said [grantees] are desirous of having their said tract of land relieved from the operation of said mortgage."

[4] Action to Quiet Title—Findings of Ownership—Judgment.—In an action to quiet title, ultimate findings of the fact of ownership in the defendants and lack of ownership in the plaintiff will support a judgment in favor of the defendants, unless the findings of probative facts are at variance with such finding of ownership.

APPEAL from a judgment of the Superior Court of Humboldt County. George D. Murray, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. C. MacFarland for Appellant.

G. W. Hunter, L. M. Burnell and J. S. Burnell for Respondents.

BRITTAIN, J.—The plaintiff appeals on the judgment-roll alone after trial of a suit to quiet title to certain minerals or mineral rights, and the right to enter upon the defendants' lands, there to dig, bore, and mine for the subterranean substances. He maintains the findings do not support the judgment, because he claims all the elements of adverse possession on the part of the defendants do not appear, and because a certain instrument set forth in the findings was, as he urges, merely a release of mortgage and not a conveyance of the minerals and mining rights.

In 1869 the plaintiff's testator, by an attorney in fact, conveyed certain lands in Humboldt County to the predecessors in interest of the respondents by deed in terms a grant, reserving and excepting therefrom the subterranean oils and minerals and the right to enter upon the grantees' lands to dig, bore, or mine for the subterranean minerals, paying to the grantees such damages as they might sustain by reason of such entry. Upon the day the grant was made, the grantees mortgaged to the grantor the land conveyed to secure the payment of a promissory note payable August 31, 1870, for $1,880, with interest at ten per cent. During the month of August, 1870, before the note became due, the instrument in question was executed. It recites the fact of the making and recordation of the mortgage, giving the book and

page of record, and describes the lands, making no reference to the reservation in the original deed. It further recites that "Whereas the said John Walker and Jesse Walker are desirous of having their said tract of land relieved from the operation of said mortgage; now therefore I . . . in consideration of the premises and of the sum of One Dollar, the receipt whereof is hereby acknowledged, remise, release and forever quitclaim unto the said John Walker and Jesse Walker their heirs, executors, administrators and assigns the aforesaid premises and all the right, title and interest, both in law and equity, which I have in and to the same."

The appellant maintains that by the reservation in the original grant the grantor created two separate and distinct estates in the land, one being of the surface, or soil, and the other of the oil and similar substances below the surface, together with the right to remove them. (*Murray* v. *Allred,* 100 Tenn. 100, [66 Am. St. Rep. 740, 39 L. R. A. 249, 43 S. W. 355]; *Kincaid* v. *McGowan,* 88 Ky. 91, [13 L. R. A. 289, 4 S. W. 802].) He argues that the clear intent of the instrument is indicated by the recital, "Whereas the said John Walker and Jesse Walker are desirous of having their said tract of land relieved from the operation of said mortgage," and that "nowhere in the instrument can be found the slightest evidence of intention to reconvey any oil lands."

The case of *Barnstable Sav. Bank* v. *Barrett,* 122 Mass. 172, relied upon by the appellant, was a case where the operative words indorsed on the back of the mortgage itself were: "Having received full payment and satisfaction of the within mortgage, I do hereby cancel and discharge the same, and release and forever quitclaim unto the within named G., his heirs and assigns, all my right, title and interest in and to the within described premises. To have and to hold," etc. At the time the mortgagee's interest under the mortgage was the only interest he had, although he theretofore had another mortgage on a portion of the land, which he had assigned to one Flagg several months prior to the release. The mortgagee's assignment to Flagg was not seasonably recorded, and to defeat Flagg's interest it was sought to extend the instrument beyond its clear meaning. The court properly held this could not be done.

In *Donlin* v. *Bradley,* 119 Ill. 412, [10 N. E. 11], immediately after the description of the land in the deed in ques-

tion was the provision: "This deed is made for no other purpose except to release a certain trust deed," describing it. The court held that the deed was limited to the purpose stated.

In *Barr* v. *Foster*, 25 Colo. 28, [52 Pac. 1101], where the quitclaim deed specifically referred to the interests of the grantors arising out of a certain contract, it was held that it did not release a deed of trust, of which the grantors were the beneficiaries. In each of these cases, the operative words of quitclaim themselves contained a limitation upon the interest conveyed.

The appellant maintains that if the language of the instrument is given its full and most stringent construction, it cannot by any means refer to the oil rights. A serious argument presented by able counsel in support of the two constructions to be given the instrument demonstrates, if not its ambiguity, at least a repugnance between the recital and the operative words. Since the appeal is upon the judgment-roll alone, this court is limited to a consideration of the facts presented by the findings and admitted by the pleadings. The court is confined to those fundamental rules of construction, which all lawyers find so easy to state, and which the reports of adjudicated cases show no two lawyers on opposite sides of a controversy can agree to apply in the same way. The first of these rules is to ascertain the intent of the parties by taking the instrument by the four corners and, if possible, giving effect to every word in it in accordance with its usual meaning. In the Civil Code are codified the rules of interpretation. Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense. (Civ. Code, sec. 1645.) **[1]** The operative words in this instrument, "remise, release and forever quitclaim all my right, title and interest, both in law and in equity," whether considered as technical words of conveyancing or words understood in their ordinary and popular sense, are the most apt which could have been selected to convey to the Walkers both the equitable interest of the mortgagee and the legal interest in the minerals and mining rights. These words standing alone and constituting the entire operative clause of the instrument in themselves are entirely unambiguous. If they had been written without any

recital having been made, there could be no question as to their legal effect. No evidence could have been introduced and no inference drawn to limit them simply to a release of the mortgage. They were not coupled in the operative clause with a limitation to the mortgage interest as were the operative clauses in the Barnstable Savings Bank case, in *Donlin* v. *Bradley,* and in *Barr* v. *Foster,* cited by the appellant.

The appellant maintains that notwithstanding the lack of ambiguity in the operative words of the instrument, the intent of the grantor was shown by the recitals in the preamble. If his contention were sound, no matter how broad was the language used, it would not be extended beyond the clear intent of the parties. (Civ. Code, sec. 1648.) It is only when the operative words of grant are doubtful that recourse may be had to its recitals to assist in the construction. (Civ. Code, sec. 1068.) The recitals in an instrument may be operative in the sense that they may bind either or both parties to the truth of the facts stated, or they may be examined for the purpose of resolving an ambiguity in the operative words of the grant itself, but where the words of grant are clear, the recitals cannot be resorted to for the purpose of imparting an ambiguity to the entire instrument by which clear words of grant may be limited in their effect. It may be contended that a quitclaim deed is not a grant and that section 1068 of the Civil Code applies only to technical grants. [2] But the word "grant" includes all sorts of conveyances, including quitclaim deeds. (*Faivre* v. *Daley,* 93 Cal. 664, [29 Pac. 256].) If several parts of a grant are absolutely irreconcilable, the former part prevails (Civ. Code, sec. 1070), but this section must be read in connection with section 1068, and with section 1069, which provides that it is to be interpreted in favor of the grantee.

[3] Grants are to be interpreted as other contracts (Civ. Code, sec. 1066), and they may be explained by the circumstances under which they were made and the matter to which they relate (Civ. Code, sec. 1647). An examination of the surrounding circumstances in making the instrument in question supports the conclusion that under the rules of construction of the language of the instrument, the operative words must be given their full significance.

The appellant maintains that the external circumstances show the instrument was intended merely as a release. An

examination of all the circumstances before the court gives little support to this contention. Thomas R. Bard, as the attorney in fact of Thomas A. Scott of Philadelphia, in 1869 was authorized to bargain and sell Scott's lands in Humboldt County, to make deeds of quitclaim, special warranty, and general warranty, to accept mortgages, to collect moneys due Scott and to compound the same; to execute and to satisfy of record releases of mortgages and to give acquittances and releases. When the instrument in question was executed under this power, Bard knew that he was authorized to make quitclaim deeds and to release mortgages. He also knew that on the same day the mortgage was made, he reserved what the appellant maintains was a legal estate out of the mortgaged premises, consisting of rights under the surface of the lands mortgaged. He knew, therefore, that his principal had both legal and equitable interests in the lands. The instrument was made before the mortgage debt became due. It is significant that it does not recite the fact of payment of the debt. It does recite that the owners were desirous of having the lands relieved from the operation of the mortgage, and in consideration of that desire, and for a further consideration, Bard used the language necessary to convey both the legal and the equitable interests of his principal. He did not use the language he was expressly authorized to use in the event of the payment of the mortgage debt.

These transactions occurred nearly fifty years ago. The original grant from Scott to the Walkers was made in November, 1869. The instrument in question was made in 1870. Scott lived for twenty-one years after the instrument in question was executed. During that period the Walkers dealt with the property in all respects as their own; deeds between the original grantees and from the original grantees to their successors were executed and recorded, and a few months before Scott's death, successors of one of the Walkers in terms leased to one Graham a portion of the lands included within the original deed for the express purpose of drilling, digging, boring, and removing petroleum, oil, and similar substances therefrom. Scott died in 1891; between that time and 1903 numerous other conveyances and leases of the lands and parts of them were recorded, some of them reserving in the grantors named in these latter conveyances, and others transferring to the grantees named therein, the oil and similar products

with the right to extract the same. All these instruments, some fifteen in number, were matters of public record more than twelve years before the plaintiff was appointed the administrator of the estate of Scott, with the will annexed. His appointment was not until twenty-three years after the death of Scott. The appointment was made in 1914, and this suit was brought shortly thereafter. Notwithstanding 'the appellant's claim that during this period of half a century Scott and his estate have held an estate in the lands of which they could not be divested by nonuser, that interest in the lands was never assessed, at least before 1909, to either Scott or Scott's estate. The entire interest in the property was assessed to the holders claiming under the instrument in suit, and all taxes were paid by them. Their property was fenced and held by them openly as their own. Even though all the elements of adverse possession of such an estate as the appellant claims do not appear, for the reason that the clock would not begin running until Scott or .his representatives were denied the right to exercise the privileges reserved in the original deed, in view of the notice imparted by the recordation of the instruments during a long period of years showing the adverse claims of the Walkers and their successors, coupled with the fact that at the expiration of forty-five years after the instrument in suit was executed, the plaintiff, as the representative of Scott's estate, deemed it necessary to bring a suit to quiet those adverse claims, the principle that equity does not look with favor upon stale claims might well be applied. Whether this principle would be conclusive or not, the dealings of the Walkers and their successors with the land after the execution of the instrument in suit and the silence on the part of Scott and the representatives of his estate in regard to the clouds upon his title, if he still retained title, would indicate that the parties to the instrument had themselves considered the operative words to mean exactly what they say.

[4] Respondent urges that apart from any question of construction of the instrument or of adverse possession, the court made the ultimate findings of fact of ownership in the defendants and lack of ownership in the plaintiff, and that these findings fairly sustain the judgment. This rule directly applies to the present case, unless the findings of the probative facts regarding possession and the construction of

the instrument in suit are at variance with the finding of ownership in the defendants. (*McArthur* v. *Goodwin,* 173 Cal. 499, [160 Pac. 679].) In support of the construction given to the instrument in suit by the lower court, there may have been additional facts before the lower court not presented by the judgment-roll. Ordinarily the existence of whatever facts might be necessary to support the finding of ownership in such a case would be presumed to have been presented to the lower court in support of its action. Upon the facts before this court, Scott's title was divested in 1870, since which time the defendants and their predecessors in interest have been, as they still are, the owners of the lands in fee.

Judgment is affirmed.

Langdon, P. J., and Haven, J., concurred.