## METZGER v. MILLER, Alien Property Custodian.

(District Court, N. D. California, Second Division. August 9, 1923.)

### No. 51.

1. **Deeds &⟶100—Whether present intention to pass title disclosed determined in light of surrounding circumstances.**

   In determining whether letters from mother to son disclosed present intention and purpose to pass title so as to constitute grant or transfer of property, her expressions of purpose are to be considered in light of circumstances surrounding the parties at the time.

2. **Deeds &⟶99—Letters claimed to constitute present grant to be regarded as one transaction.**

   Under Civ. Code Cal. § 1642, letters written plaintiff by his mother or at her direction and claimed to evidence present intention and purpose to pass title to real estate are to be regarded as one transaction and as evidencing one contract.

3. **Frauds, statute of &⟶103(I)—Letter is sufficient memorandum of contract concerning real property.**

   Contract concerning real property need not be in any particular form, and letter is sufficient memorandum of agreement to avoid the statute.

4. **Deeds &⟶26—Letters from mother to son held sufficient.**

   Letters from mother living in Germany to son who, at her request, had gone from Idaho to San Francisco to look after property inherited by her from a sister, *held* to disclose present purpose to convey certain real estate to him and to operate as conveyance, under Civ. Code Cal. §§ 1039, 1053, 1066, 1072, 1105, and 1647.

5. **Executors and administrators &⟶315(6)—Decree held not to conclude plaintiff from claiming gift from devisee.**

   Where mother wrote her son letters disclosing present intention to convey to him certain real estate inherited by her from a sister, decree of distribution distributing the property to the devisee was not conclusive against the son's claim, as he was not bound to know legal effect of the letters or submit his claim to probate court, especially where he was not a party.

---

&⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Action by John August Metzger against Thomas W. Miller, as Alien Property Custodian, etc. Decree for plaintiff.

Thomas B. Leeper, of Sacramento, Cal., for plaintiff.

John T. Williams, U. S. Atty., and James R. Kelly, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

VAN FLEET, District Judge. This is an action in equity against the defendant as Alien Property Custodian to have it declared that certain property, seized by the latter under the supposed protection of the Trading with the Enemy Act of October 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½a–3115½j), is the property of the plaintiff, and for an accounting of the income and profits thereof.

In 1914, one Mathilde Graf died in Sacramento, in this state, leaving an estate, the bulk of which she devised to her sister, Karoline Schwab, living in Germany and a subject of the then German Emperor. Her will was in due course admitted to probate, the estate administered, and the devised property regularly distributed to the devisee by decree entered in 1916. The money or cash distributed to Mrs. Schwab, something over $63,000, was duly transmitted to her in Germany; but the property in suit, consisting of two parcels of real estate in the city of Sacramento and certain notes secured by trust deeds on real estate, were left standing in her name on the records under the decree of distribution and so remained at the time of the passage of the Trading with the Enemy Act, and was thereafter seized and taken into the custody of the defendant Miller as the property of an alien enemy and is still so held by him.

Plaintiff, a son of Karoline Schwab, who has lived in this country for many years and is now a naturalized citizen, brings the action based upon the claim that prior to the seizure of the property in suit, the same had been for a good and valuable consideration conveyed and assigned to him by his mother, and for that reason was not subject to seizure by the defendant under the act in question as the property of the latter. The plaintiff's alleged deraignment of title is a series of letters written to him by his mother and a daughter at her direction, and the sole question upon which the cause has been submitted is whether the declarations in these letters are of a character to constitute a conveyance of the property to plaintiff.

The evidence in behalf of plaintiff is wholly uncontroverted and discloses in a general way these facts: The plaintiff, at the death of his mother's sister, was living in Idaho and employed in earning his livelihood—receiving a salary of $100 per month. Upon learning of her sister's death and of the devise made to her, his mother wrote the plaintiff asking and urging upon him that he leave Idaho and go to Sacramento to look after her interests in the sister's estate, stating that she would pay his expenses and, moreover, intended that the property left to her, except the ready money, should be his; that all she wanted was the money. Plaintiff, it seems, was an illegitimate son, and his mother took occasion to refer to the fact and that he had never gotten anything from her husband's estate, which she felt was an injustice,

and that now she proposed to provide for him and make up for the wrong done him.

After the receipt of several letters and repeated assurances of his mother's intention to give him a portion of the estate left to her by her sister, plaintiff abandoned his employment and home in Idaho, and went to live in Sacramento, and has resided there since; aiding in looking after the property of his aunt's estate during the administration, and being permitted by his mother to occupy with his family the dwelling of his late aunt (one of the parcels of real estate involved) without rent, and to enjoy the rent of the other and smaller parcel. During this time and prior to the time of the seizure of the property by the defendant, plaintiff had many letters from his mother with reference to her purpose to give him the property. At first the statements took the form more of a future purpose than a present intent to give him the property, but later her expressions assumed a more definite form indicating a present intention that the property, excepting the cash, was to be then regarded by him as his own. The following extracts from the letters will illustrate their character:

In one of her early letters addressed to him in Idaho she wrote, "Now you go to Sacramento and I will give you what my sister left me," stating that her intention to do this was because he was an illegitimate son and she had not been able to do as much for him as she had for the other children. In a letter of March 13, 1915, the sister wrote him:

"You worry so much about the inheritance. All you want to know I have already often written you. The house on Ninth street mother has written you already long since; you shall have it."

In January, 1916, the mother wrote:

"The house which Marcus built shall belong to you. You need no lawyer for that. I have already written Reverend Oehler to this effect. You are now living there and are to stay there and nobody can ever send you out."

In another letter written in 1916 she wrote plaintiff:

"I am giving you that property and you now send me the remainder of the cash and then you have a nice share. I could not have done so much for you as I have for the other children. They got their share from the father so this is now yours."

On February 11, 1916, the mother wrote plaintiff:

"I am grateful to you for looking after the matter and hope it will soon be settled finally"—referring to the administration of the estate.

On March 16, 1916, she wrote plaintiff:

"Now dear August, you repeatedly write of the house in which you are living. I have on several occasions written to you and the Reverend (Reverend Oehler, one of the executors) that the house and the little place with the garden are your property. It is surely a nice large share of aunt's property. And also Uncle John's watch. I have already written you. I do not know whether you received the letter."

On June 8, 1916, she wrote:

"How often have you not written about our dear aunt's house on Ninth street? I have written to you many times and also to the Reverend Oehler

that the small place also, as well as all the mortgages are your property. On account of the wicked war some letters are lost."

[1] Do these expressions sufficiently disclose a present intention and purpose on the part of the mother to pass the title to·constitute in law a grant or transfer of the property in question? I was left somewhat in doubt on the question at the hearing, but a more mature consideration of the material features of the correspondence in the light of the authorities has tended to remove that doubt. The mother's expressions of her purpose are to be considered in the light of the circumstances surrounding the parties at the time. As to the later of the letters, written after plaintiff's removal to Sacramento and the abandonment of his employment in Idaho, they show that the mother knew that plaintiff had no means of support for himself and family other than this property. She had authorized his occupation with his family of one piece of the real estate and the enjoyment of the rent coming from the other, while the notes and mortgages were evidently not yet surrendered by the executors because of the administration of the estate being still incomplete. This course on the part of the mother would seem to have an important bearing upon the question whether her intention was to presently vest title of the property in her son or was only intended as expressing a future purpose to do so.

[2] All these letters are to be considered as written by the mother to the plaintiff, those written by the daughter being at the direction of the former. They are therefore to be regarded as one transaction and evidencing one contract. California Civil Code, § 1642; Brannan v. Mesick, 10 Cal. 106; Firth v. Los Angeles, 28 Cal. App. 400, 152 Pac. 935.

[3, 4] A contract concerning real property need not be in any particular form. A letter is a sufficient memorandum of an agreement relating to such property to avoid the statute of frauds. Moss v. Atkinson, 44 Cal. 3. The California Civil Code defines a "transfer" as an act of the parties by which title to property is conveyed from one person to another. Civil Code, § 1039. When in writing it is called a grant (Civil Code, § 1053), and a grant is to be interpreted in like manner as contracts in general (Id. § 1066), and may be explained by the circumstances under which they are made and the matters to which they relate (Id. § 1647). MacFarland v. Walker, 40 Cal. App. 512, 181 Pac. 248.

Words of inheritance or succession are not necessary to transfer a fee (C. C. § 1072), and a fee-simple title is presumed to pass by a grant unless it appears a lesser estate was intended (C. C. § 1105). These provisions of the California Code were intended to modify the common-law rule in this state with respect to transfers of real property. Painter v. Pasadena, 91 Cal. 81, 27 Pac. 539.

In Devlin on Deeds (2d Ed.) 211, it is said:

"The word 'grant' has become a generic term of transfer. But no particular formula of words is necessary to effect a valid conveyance of land. If the words used show an intent to convey they are sufficient for the purpose."

And in a note to the text it is said:

"Precise technical words, however, are unnecessary, any language equivalent to a present contract of bargain and sale being sufficient. If the courts can discover an intention to pass title they will give effect to the deed, although the expression may be inaccurate."

See, also, Ball v. Wallace, 32 Ga. 171.

Tested by the foregoing rules of interpretation, I am constrained to the view that when considered in the light of the circumstances as they existed when the letters were written, the language employed must be regarded as sufficient to show a present purpose to convey and to sustain the contention that it operated as a conveyance by the mother of the real property involved; and there is no question made that it was sufficient to pass title to the chattels described in the bill.

[5] It is suggested but not argued that plaintiff is in some manner concluded by the decree of distribution. But there is nothing in the suggestion. In the first place, plaintiff was not bound to know the legal effect of these letters, nor to submit any claim arising thereunder to the probate court. And in the second place, he was not a party to that decree, and it does not, in any wise, preclude him from making the present claim.

This conclusion renders it unnecessary to consider the other theories advanced by plaintiff under which he claims the same result must be reached.

Plaintiff should have a decree directing a surrender by defendant of the property described in his bill, and for an accounting of the income derived therefrom since its seizure.

It is so ordered.