**BOYLAN et al. v. LILLARD.**

**No. 3833.**

United States Court of Appeals
Tenth Circuit.

May 4, 1949.

Hicks Epton, Wewoka, Okl. (Watson, Richart & Titus, Joplin, Mo., and Horsley, Epton & Culp, Wewoka, Okl., on the brief), for appellants.

Glenn O. Wallace, of Wewoka, Okl., (William M. Haulsee, Wewoka, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

On August 29, 1910, C. B. Boylan and Louisa Boylan, his wife,[1] executed and delivered to B. M. Crouch a warranty deed conveying a tract of land in Seminole County, Oklahoma, subject to a vendor's lien for $3,000, with interest at 8 per cent from January 1, 1911. The habendum clause recited that the conveyance was subject to such vendor's lien and that Boylan reserved an undivided one-half interest in the oil and gas in such land. Thereafter, on December 15, 1913, the Boylans executed and delivered to Crouch a quitclaim deed, conveying such land. It recited that for a consideration of $3,755.81 fully paid, the Boylans " * * * have remised, released and quit claimed, and by these presents do for themselves heirs, executors and administrators, remise, release, and forever quit claim unto" Crouch "and to their heirs and assigns forever, all their right, title, interest, estate, claim and demand, both at law and in equity, of, in and to" such land; that "This quitclaim deed is given for the purpose of releasing a certain vendor's lien retained by" the Boylans "in a certain warranty deed dated Aug. 29, 1910, which said deed is recorded in the records of Register of Deeds of Seminole County, Oklahoma, at Wewoka, Oklahoma in Book 15, at page 409, together with all and singular the hereditaments and appurtenances thereunto belonging." The habendum clause recited: "To have and to hold, the above described premises unto the said B. M. Crouch heirs and assigns; so that neither the said" Boylans, "nor any person in their name and behalf, shall or will hereafter claim or demand any right or title or interest in or to the said premises or any part thereof; but they and every one of them shall by these presents be excluded and forever barred."

On the same day, Crouch and C. S. Crouch, his wife, executed and delivered to C. B. Boylan a mortgage covering the land described in the quitclaim deed containing covenants of warranty and containing no reservations or exceptions from the granting clause or the covenants of warranty. On February 2, 1925, the land passed to Mayme Lillard by mesne conveyances, none of which contained any exceptions or reservations. Lillard has been in possession of the land and received the rents and profits therefrom since February 2, 1925.

On April 6, 1922, W. E. Grisso, who held under a deed to the land from Crouch, executed an oil and gas lease to the Magnolia Petroleum Company for a term of five years. On March 18, 1927, Magnolia commenced the drilling of a well for oil and gas on the land and continued the drilling thereof until September 12, 1927, to the Wilcox Sand, at a depth of 4460 feet, when the same was completed and abandoned as a dry hole.

Prior to the drilling of the well by Magnolia, Lillard had sold and conveyed an undivided ⅜ths, or a 60-acre, interest in the oil and gas and minerals in such land. On December 9, 1943, Paul J. McIntyre and associates, holders of an oil and gas lease from Lillard and her grantees, commenced a well on the land and on February 24,

---

[1] Hereinafter referred to collectively as the Boylans.

574

1944, completed and abandoned it as a dry hole at a depth of 3378 feet.

In March, 1946, Lillard and her husband, J. C. Lillard, now deceased, made and executed to J. A. Ligon, H. M. Ligon, and J. D. Ligon an oil and gas lease for a term of five years covering the land. Mayme Lillard received a bonus of $1.00 per acre on the basis of an ownership of 100 acres and collected delay rentals on that basis for the years 1947 and 1948.

C. B. Boylan died on August 3, 1945, leaving surviving him as his sole and only heirs, Louisa Boylan, Margie Lou Sharp, Elaine Boylan, and Ebert E. Boylan. On August 5, 1946, the heirs of C. B. Boylan executed and delivered to the Ligons an oil and gas lease upon the land for a term of five years.

From December 15, 1913, to August 5, 1946, neither C. B. Boylan nor any of his heirs executed instruments of any kind or character purporting to convey any interest in the land, except an assignment of the mortgage by C. B. Boylan to Thomas Hollis, on May 6, 1915.

On January 28, 1948, Mayme Lillard commenced this action against the heirs of C. B. Boylan in the district court of Seminole County, Oklahoma, to quiet the title to such land. The defendants removed the action to the Federal court. From a judgment in favor of Mayme Lillard, the defendants below have appealed.

The question presented is whether the quitclaim deed conveyed the mineral interest reserved in the warranty deed from the Boylans to Crouch.

It will be noted that the recital in the quitclaim deed with respect to the release of the vendor's lien is merely a recital of the purpose for which the quitclaim deed is given and does not purport to limit either the granting clause or the habendum clause. A like recital in a right-of-way deed was considered by the Oklahoma Supreme Court in Higgins v. Oklahoma City, 191 Okl. 16, 127 P.2d 845. In that case, the court held that by virtue of the provisions of 16 Okl.St.Ann. § 29, which reads, "Every estate in land which shall be granted, conveyed or demised by deed or will shall be deemed an estate in fee simple and of inheritance, unless limited by express words," such deed conveyed a fee simple title. Counsel for appellants urge that that case is to be distinguished because there the recital was the purpose for which the land was to be used by the grantee, while here the recital is of the purpose for which the instrument was executed.

But a declaration of the purpose for which the conveyance is made or for which the granted land is to be used, without more, does not limit the estate granted.[2]

It is true that under the Oklahoma decisions, in arriving at the intent of the parties, the whole instrument will be considered,[3] but the quitclaim deed must be construed with due consideration given to § 29, supra.[4] Here, there was no express limitation of the granting clause or of the habendum clause. The recital relied upon was merely of the purpose for which the quitclaim deed was given. It does not purport expressly or impliedly to limit either the granting clause or the habendum clause which were unqualified, complete, and unambiguous.

If the recital could be held to create doubt, the contemporaneous construction of the quitclaim deed by the parties, as manifested by the mortgage given at the same time and as a part of the same transaction, and the subsequent conveyances by Crouch and his successors in title, and the many years of inaction by C. B. Boylan persuasively indicate that C. B. Boylan intended, by his quitclaim deed, to convey a fee simple estate without limitation or exception.

Affirmed.

[2] Marland v. Gillespie, 168 Okl. 376, 33 P.2d 207, 212; MacFarland v. Walker, 40 Cal.App. 508, 181 P. 248; Thompson on Real Property, Vol. 4, § 3324; Bodwell Granite Co. v. Lane, 83 Me. 168, 21 A. 829, 830.

[3] Higgins v. Oklahoma City, 191 Okl. 16, 127 P.2d 845, 848.

[4] Id.