2011 OK CIV APP 55

**Anna L. McDONALD and Sharley A. Trotter, Plaintiffs/Appellees,**

v.

**Hollis MARTIN, a/k/a John Hollis Martin, Defendant/Appellant.**

**No. 107,789.**

Court of Civil Appeals of Oklahoma, Division No. 3.

April 1, 2011.

---

William L. Hickman, Tulsa, Oklahoma, for Plaintiffs/Appellees.

James H. Ferris, Michael E. Esmond, Moyers, Martin, Santee & Imel, LLP, Tulsa, Oklahoma, for Defendant/Appellant.

KENNETH L. BUETTNER, Judge.

¶1 Defendant/Appellant Hollis Martin appeals from a judgment which quieted title to a strip of property between the survey boundary and a disputed boundary fence line in favor of Plaintiffs/Appellees Anna L. McDonald and Sharley A. Trotter[1] (collectively, Appellees), and awarded damages for removing a tree.[2] Appellees filed suit after Martin removed a fence and trees based on his assertion they were on his property. Martin conceded that the strip of land was included in the property purchased by Appellees pursuant to adverse possession, but Appellees then conveyed the strip, along with other property outside the survey lines of their lot, by a quit-claim deed. We agree with Martin that the quit-claim deed conveyed away ownership of the strip of land acquired by adverse possession, and we reverse the trial court's order quieting title in the strip on that ground. Nevertheless, the facts support consideration whether the surveyed boundary line may have been moved by acquiescence because the fence was in place and treated as the boundary for some amount of time. We remand for consideration of that issue, which was not specifically argued by the parties nor addressed by the trial court.

¶2 In their Petition, Appellees asserted that in 1994 their property was surveyed and they installed fences on its east and west boundaries.[3] Appellees alleged that Martin later purchased the property west of theirs and had begun tearing down the fence on their west boundary and destroyed 5 trees on Appellees' land. Appellees sought an injunction against further damage to their fence and trees, as well as damages for trespass, damage to property, and diminution in the value of their land.

¶3 In his Answer & Counterclaim, Martin contended that Appellees' fence was not on the boundary line, but was actually installed on his property and therefore he could not be liable for trespass, nor could he be enjoined from exercising his rights to the property. Martin asserted Appellees claimed to own the property between their fence and the true boundary line. Martin's counterclaim sought to quiet title to the disputed tract.[4]

¶4 In their Amendment to Petition, Appellees made claims for adverse possession, slander of title, and damage to property.

1. Trotter testified that McDonald is her daughter.

2. Martin's original appeal of the quiet title judgment was dismissed for failure to resolve all claims. The trial court then granted judgment denying Appellees' request for damages for slander of title. The later judgment resolved the remaining claim and this case is ripe for review. Martin's appeal addresses only the quiet title judgment.

3. Appellees described their property as the north 3/4 of the E/2 NW/4 NW/4 NE/4 of 33–18N–14E of the Indian Base and Meridian, less the west 132 feet thereof, less the east 25 feet thereof, and less the north 50 feet thereof.

4. Martin claimed his property is described as: Part of the E/2 W/2 W/2 NE/4 of 33–18N–14E of the Indian Base and Meridian in Tulsa County, more particularly described as: commencing at the NW corner of the E/2 W/2 W/2 NE/4, then east along the north line thereof a distance of 15 feet to the point of beginning, then south a distance of 335 feet, then east a distance of 117 feet, then north a distance of 335 feet, then west along the north line a distance of 117 feet to the point of beginning, containing .76 acres, more or less, less and except the north 50 feet thereof which has been dedicated for County usage. Martin alleged his property was then possessed by his tenant under a lease agreement.

Martin asserted Appellees obtained their property by Warranty Deed recorded July 27, 1995 and Martin obtained his by Warranty Deed recorded May 16, 2000. He included a copy of a survey taken April 24, 2000, which showed the fence Appellees installed within the boundary of the property Martin purchased.

Appellees answered Martin's counterclaim, asserting as defenses that pursuant to adverse possession, they own the strip claimed by Martin; that Martin's quiet title claim sought to create an illegal lot split; that Martin's claims slandered Appellees' title; and that Martin's claims for damages are offset by Appellees' damages.

Martin answered, admitting Appellees owned the property described in their Petition, and reasserting his ownership of the property described in his counterclaim.

¶ 5 Bench trial was held August 2, 2006. The trial court filed the Journal Entry of Judgment August 28, 2007, in which it quieted title "with only a slight variation of the North South West Boundary of their land" in Appellees to property described as:

> The north 3/4 of the E/2 NW/4 NW/4 NE/4 of 33–18N–14E of the Indian Base and Meridian in Tulsa County, less the west 132 feet thereof, less the east 25 feet thereof, and less the north 50 feet thereof.

The court found that the October 23, 1995 quit claim deed was "nothing more than an instrument to clear the title by virtue of a real estate mortgage," and that the instrument did not affect the title of Appellees or Martin. The court then described the "slight variation" of the boundary:

> (P)ursuant to Plat Survey made on April 24, 2000, by White Survey Company, the east boundary line of (Appellees') land shall extend from the original pin at the southeast corner thereof, and go in a slight angle to the west, ending 4.8 feet east of the original survey line, and at a distance of 459 feet from the southeast corner of said above described land; thence due east a distance of 4.8 feet to the original survey line; thence due north a distance of 43 feet to the northeast quarter (corner) of the above described property.

The court awarded Appellees $615.20 for damage to a tree and granted Appellees the right to rebuild an 8 foot high wood fence. Finally, the court directed the parties not to interfere with each other's occupancy of their property.

¶ 6 The trial court filed its Final Journal Entry of Judgment October 28, 2009, in which it denied Appellees' claim for damages for slander of title. The trial court denied any other relief not granted in the two judgments. Martin appeals.

¶ 7 At issue is a narrow strip of land between a fence and the true surveyed boundary line. In his brief, Martin concedes that Appellees erected the fence in 1994 along the same line as a prior fence and that the prior fence was in place for over 40 years.[5] Martin also concedes that the evidence at trial was sufficient to support a finding that Appellees were the owners of the disputed strip of land by adverse possession in 1994. Martin's claim is that Appellees conveyed their adverse interest in the disputed strip by a quit-claim deed they made in 1995.

¶ 8 Martin's Exhibit 1 is a quit-claim deed dated October 27, 1995 and recorded November 2, 1995, in which Appellees conveyed to "record owners" property described on an attached exhibit. On the quit-claim deed, just below the typed statement "see exhibit 'A' attached hereto and made a part hereof" (in place of the property description), is the typed statement " * *deed being filed to remove cloud on title created by mortgage filed in book 5731, page 979* * ".[6] The legal description on the attached exhibit includes the described property later purchased by Martin.[7] Necessarily then, the description in the quit-claim deed includes the disputed strip of land.

¶ 9 Martin contends that any title to the strip that had been acquired by adverse possession was conveyed away in the quit-claim deed. The trial court held that

---

**5.** At trial, Trotter testified that a barbed wire fence surrounded the property when Appellees bought it and that they replaced it by having their fence installed along the same line. Two neighbors testified the fence had been in the same place for over 40 years.

**6.** Appellees' original mortgage is not in the record, but we infer that it included a property description that was broader than the property conveyed to Appellees by their deed, and included the disputed strip. The record includes a later mortgage, recorded in 2001, in which Ap-

pellees refinanced their property. The 2001 mortgage describes the secured property as that which Appellees obtained by deed in 1994, which did not include the disputed strip.

**7.** Exhibit A of the quit-claim deed describes the property conveyed (in pertinent part):

Part of the E/2 W/2 W/2 NE/4 of Section 33–18N–14E, beginning at the northwest corner of the E/2 W/2 NE/4, then east along the north line a distance of 132 feet, then south 660 feet, then west 132 feet, then north to the point of beginning, less the north 50 feet.

the quit-claim deed had no effect because of its statement that it was made to remove a cloud on title created by a mortgage. "A quitclaim deed, made in substantial compliance with the provisions of this chapter, shall convey all the right, title and interest of the maker thereof in and to the premises therein described." 16 O.S.2001 § 18. And, a deed conveys a fee simple interest absent express words of reservation. 16 O.S.2001 § 29. A declaration of the purpose of a deed does not alone limit the estate granted. *Boylan v. Lillard*, 174 F.2d 572 (10th Cir.(Okla.)1949). We agree with Martin that the language describing the purpose of the quit-claim deed cannot be construed as a reservation of the strip of land obtained by adverse possession. Accordingly, the undisputed evidence shows that any interest in the disputed strip to which Appellees held title pursuant to adverse possession was conveyed in the quit-claim deed because the description in that deed included the disputed strip. The trial court therefore erred in holding the quit-claim deed immaterial, and in quieting title in the strip in Appellees.

¶ 10 That finding does not resolve this dispute, however. The trial court did not consider whether the boundary between the two properties had been varied by acquiescence. Oklahoma recognizes the doctrine of boundary by acquiescence. Boundary by acquiescence has been found:

> Where adjoining landowners occupy their respective premises up to a certain fence line which they mutually recognize and acquiesce in for a long period of time, usually the time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.

*Lewis v. Smith,* 187 Okla. 404, 103 P.2d 512 (1940). In *Lewis,* the Court considered four factors for establishing a boundary by prescription: 1) the division of a unit of land; 2) a fence or other boundary between the two portions which deviates from the true line established by government survey; 3) continued maintenance of the fence for a sufficient time period; and 4) the parties' use of the land on either side. The intention of the parties in establishing the boundary is not the determining issue.

¶ 11 Boundary by acquiescence is an equitable doctrine which may irrevocably vary the surveyed boundary line:

> It is a well-settled principle of law that a boundary line may, under certain circumstances, be permanently and irrevocably established by parol agreement of adjoining owners. When there is a doubt or uncertainty, or a dispute has arisen, as to the true location of a boundary line, the adjoining owners may by parol agreement establish a division line; and, where the agreement is executed and actual possession is taken under such agreement, it is conclusive against the owners and those claiming under them.

69 A.L.R. 1430. That annotation explains that boundary by acquiescence differs from adverse possession and is closer to equitable estoppel. In *Midland Valley R. Co. v. Imler,* 1927 OK 435, 262 P. 1067, 130 Okla. 79, the Oklahoma Supreme Court quoted the following statements on the doctrine of boundary by acquiescence (citations omitted):

> If adjoining proprietors deliberately erect monuments or fences, or make improvements on a line between their lands on the understanding that it is the true line, it will amount to a practical location. * * *
>
> . . . A practical location not induced by fraud or mistake will conclude the parties and their privies, although it may subsequently, after long acquiescence, be ascertained to vary from the course called for in the deeds. * * *
>
> . . . The erection and continued existence of a fence has been regarded as showing an acquiescence in the fence as marking the boundary, provided the fence is recognized as a partition fence. * * *
>
> . . . To establish a boundary line by acquiescence, it is not necessary to show that a claim was made to land beyond that fixed in the party's deed. Legal acquiescence

for the required period is all that is essential.

Title to any portion of the land described in the quit-claim deed was conveyed therein to "record owners" and the trial court erred in disregarding that deed. Nevertheless, we remand for consideration of whether the described boundary in the parties' deeds was permanently altered by acquiescence subsequent to the 1995 quit-claim deed.

¶ 12 REVERSED AND REMANDED.

MITCHELL, P.J., concurs; JOPLIN, J., dissents.